FIRST DIVISION
NOVEMBER 19, 2007

No. 1-06-3603

| | | |
|---|---|---|
| JOHN MILLER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 03 CH 7882 |
| | ) | |
| LOCKPORT REALTY GROUP, INC., d/b/a | ) | Honorable |
| Re/Max Executive Team, | ) | Daniel J. Kelley, |
| | ) | Judge Presiding. |
| Defendant-Appellee. | ) | |

JUSTICE ROBERT E. GORDON delivered the opinion of the court:

Plaintiff John Miller, a licensed attorney, appeals from an order of the circuit court of Cook County granting summary judgment in favor of defendant Lockport Realty Group, Inc., on count IV of plaintiff's amended complaint, alleging tortious interference with prospective business advantage. On appeal, plaintiff argues that the trial court erred by (1) granting defendant summary judgment on the basis of the privilege of competition, and (2) by considering the privilege of competition where defendant did not plead the privilege as an affirmative defense, but raised the privilege for the first time in its motion for summary judgment. We affirm.

BACKGROUND

Walther Kariodimedjo was a diplomat for the Republic of Indonesia assigned to Chicago from 1993 to 1997. In 1993, Kariodimedjo purchased a home at 4030 Enfield Avenue in Skokie, Illinois (subject property). Kariodimedjo resided there with his family

until 1997, when he returned to Jakarta, Indonesia (known as Djakarta in 1997). Kariodimedjo's family remained in the home until July 1998.

Kariodimedjo leased the subject property from August 1998 to August 2002. Plaintiff collected the rent and otherwise managed the property on behalf of Kariodimedjo.

On August 14, 2002, plaintiff entered into an agreement with Kariodimedjo, over the telephone, to purchase the subject property for $265,000. Plaintiff claimed that the parties agreed that the sum of $265,000 was payable to Kariodimedjo in equal monthly installments over 30 years. Kariodimedjo claimed that the agreement called for payment in full with closing to take place on or before November 30, 2002.

Plaintiff moved into the property during September 2002, at the alleged request of Kariodimedjo. Plaintiff claims that he made valuable improvements to the property at his own expense. He claims that he replaced old carpeting with new carpeting, refinished the wood floors in the house, painted, landscaped, cleaned the fireplace, bought a new refrigerator for the home, and made other improvements to the subject property.

In October 2002, Kariodimedjo received $2,000 from plaintiff, which he claims to be "the remaining part of the rental money" plaintiff was once collecting on his behalf. Plaintiff claims that the $2,000 was earnest money toward the purchase of the subject property.

On January 16, 2003, after signing a listing agreement with defendant, Kariodimedjo's wife visited the subject property with defendant's agent, James Offord.

Plaintiff found Kariodimedjo's wife and Offord in the kitchen of the Skokie home. Offord identified himself as the Kariodimedjos' real estate agent and asked plaintiff if he was interested in purchasing the subject property. Plaintiff's affidavit states that Offord quoted the listing price for the subject property at $425,000. Plaintiff answered that he had already agreed to acquire the subject property from Kariodimedjo, but could not produce a written agreement. Five days later, Offord, on behalf of Kariodimedjo, made a written demand that plaintiff vacate the subject property. Plaintiff complied.

On February 2, 2003, Kariodimedjo signed a listing agreement for the sale of the subject property with defendant. Offord's affidavit states that he thought the subject property was worth between $400,000 and $430,000 in the spring of 2003. On November 29, 2004, the property sold for $385,000. Defendant received a commission of $19,250.

Plaintiff filed suit on May 5, 2003, shortly after the listing agreement between Kariodimedjo and defendant was signed. The single-count complaint sought specific performance of the oral contract to purchase the subject property. Kariodimedjo moved to dismiss the complaint on September 5, 2003. Plaintiff moved to amend the complaint to add claims against Kariodimedjo and named Lockport as a defendant on October 2, 2003. Plaintiff was granted leave to amend on November 20, 2003, and added three counts to his complaint. Counts I and II were directed against Kariodimedjo. Count I sought specific performance or the oral agreement. Alternatively, count II sought damages for breach of contract. Counts III and IV were directed against Lockport.

Count III and IV alleged tortious interference with contract and tortious interference with economic advantage, respectively.

Kariodimedjo moved to dismiss counts I and II of plaintiff's amended complaint on November 20, 2003. The motion to dismiss was premised in large part on the Frauds Act, (740 ILCS 80/1 (West 2006)). The trial court found that the oral agreement to purchase the property between plaintiff and Kariodimedjo was unenforceable and dismissed counts I and II of the amended complaint with prejudice. Plaintiff appealed the dismissal of counts I and II; however, plaintiff and Kariodimedjo reached a settlement agreement before the appeal was considered by this court. Kariodimedjo was thereafter dismissed from this action.

Plaintiff filed a motion for summary judgment on count IV of his complaint on July 10, 2006. Lockport filed a motion for summary judgment as to counts III and IV on July 12, 2006. The trial court denied plaintiff's motion for summary judgment on count IV of plaintiff's amended complaint and granted defendant's motion for summary judgment on counts III and IV. This appeal followed.

ANALYSIS

As noted, this appeal was taken from the trial court's grant of summary judgment in favor of defendant and against plaintiff. "A drastic means of disposing of litigation, a motion for summary judgment is granted only when the pleadings, depositions, and admissions on file, together with any affidavits, construed strictly against the movant and liberally in favor of the opponent of the motion, show that there is no genuine issue of

4

material fact and that the moving party is entitled to a judgment as a matter of law." *Hanley v. City of Chicago*, 343 Ill. App. 3d 49, 53 (2003). We conduct a *de novo* review on appeals from summary judgment rulings. *Hanley*, 343 Ill. App. 3d at 53.

Count IV of plaintiff's amended complaint alleged the tort of intentional interference with prospective business advantage. The tort of interference with prospective advantage recognizes that a person's business relationships constitute a property interest and as such are entitled to protection from unjustified tampering by another. *Belden Corp. v. Internorth, Inc.*, 90 Ill. App. 3d 547, 551 (1980). The cause of action implies a balancing of societal values: an individual has a general duty not to interfere with the business affairs of another, but he may be privileged to interfere, depending on his purpose and methods, when the interference takes a socially sanctioned form, such as lawful competition. The tort of interference with prospective business advantage differs from the sister tort of interference with contractual relations in the following respect: "the tort of interference with contractual relations affords a greater degree of protection to the parties to a business relationship" because "[t]he sacrosanct contractual relation takes precedence over the conflicting rights of any presumptive interferor, including his right to compete and his own prospective advantage." *Beldon Corp.*, 90 Ill. App. 3d at 551, citing W. Prosser, Torts §129, at 945 (4th ed. 1971).

The elements of the tort of interference with prospective business advantage include: "(1) plaintiff's reasonable expectation of entering a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful or intentional

interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference." *Soderlund Brothers, Inc. v. Carrier Corp.*, 278 Ill. App. 3d 606, 615 (1995).

On appeal, defendant argues that plaintiff failed to satisfy the first element of the tort of interference with prospective business advantage because plaintiff's claim is premised on an unenforceable oral contract for the sale of real property which is barred by the Frauds Act, (740 ILCS 80/1 (West 2006)). Additionally, defendant argues that plaintiff cannot satisfy the first element of the tort of intentional interference with prospective business advantage based on the law-of-the-case doctrine since it was judicially determined that the agreement between plaintiff and Kariodimedjo was unenforceable. Defendant's arguments in this respect are unpersuasive.

We first address defendant's contentions under the law-of-the-case doctrine. "[T]he law of the case doctrine provides that 'where an issue has been litigated and decided, a court's unreversed decision on that question of law or fact settles that question "for all subsequent stages of the suit." ' " *Alwin v. Village of Wheeling*, 371 Ill. App. 3d 898, 911 (2007), quoting *Pekin Insurance Co. v. Pulte Home Corp.*, 344 Ill. App. 3d 64, 69 (2003), quoting *Norton v. City of Chicago*, 293 Ill. App. 3d 620, 624 (1997).

> " 'The purpose of the doctrine is to protect settled
> expectations of the parties, ensure uniformity of decisions,
> maintain consistency during the course of a single case,

> effectuate proper administration of justice, and bring
> litigation to an end. [Citation.] An additional concern
> addressed by the law of the case doctrine is the
> maintenance of the prestige of the courts, for the reason
> that if an appellate court issues contrary opinions on the
> same issue in the same case, its prestige is undercut.' "
> *Alwin*, 371 Ill. App. 3d at 911, quoting *Emerson Electric*
> *Co. v. Aetna Casualty & Surety Co.*, 352 Ill. App. 3d 399,
> 417 (2004).

As noted, the trial court entered summary judgment in favor of Kariodimedjo on counts I and II of plaintiff's amended complaint, based on its determination that the agreement between plaintiff and Kariodimedjo was unenforceable. Plaintiff appealed from that order; however plaintiff and Kariodimedjo settled prior to any consideration of the issue by this court. Kariodimedjo was subsequently dismissed from the instant action. As is evident here, the law-of-the-case doctrine does not operate in the case at bar, as there was no determination of the issue of whether the contract between plaintiff and Kariodimedjo was enforceable by a reviewing court. *People v. Rodriguez*, 313 Ill. App. 3d 877 (2000), which is cited by defendant for its argument that the law-of-the-case doctrine applies in this case, acknowledges the necessary element of a prior appellate decision for application of that doctrine to occur.

Furthermore, defendant's argument that plaintiff fails to satisfy the first element of the tort of interference with prospective business advantage because plaintiff's claim is premised on an oral contract for the sale of real property, which is barred by the Frauds Act, is inapposite. Defendant's argument would be more suited if plaintiff's cause of action was based on the tort of interference with contractual relations, as the first element of that cause of action requires the " 'existence of a valid and enforceable contract between the plaintiff and another *** .' " [Citations.] *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 154-55 (1989). However, as noted, the tort of interference with prospective business advantage does not require a defendant to interfere with plaintiff's contractual relations, but only that defendant interfere with plaintiff's reasonable expectation of entering into a valid business relationship. *Beldon Corp.*, 90 Ill. App. 3d at 551.

Defendant then argues that summary judgment was proper based on the privilege of competition. Plaintiff argues in the first place that defendant waived its right to claim the privilege of competition because defendant did not raise that privilege as an affirmative defense, and argues that the trial court erred by considering the privilege when it was raised for the first time in defendant's motion for summary judgment. Plaintiff then argues that the privilege of competition does not apply in this case because defendant is not a *bona fide* competitor of plaintiff.

"Generally, in order to avoid surprise to the opposite party, an affirmative defense must be set out completely in a party's answer to a complaint and failure to do so results

in waiver of the defense." *Hanley*, 343 Ill. App. 3d at 53-54, citing 735 ILCS 5/2-613(d) (West 2006). However, "[w]hen, as in this case, the existence of a privilege in favor of the defendant is apparent on the face of a claim for tortious interference with prospective [business] advantage, it is the plaintiff's burden to plead and prove that the defendant's conduct was unjustified or malicious." *Storm & Associates, Ltd. v. Cuculich*, 298 Ill. App. 3d 1040, 1052 (1998). Furthermore, a review of plaintiff's amended complaint demonstrates that plaintiff was not surprised by defendant's assertion of the privilege of competition, as plaintiff attempted to plead around the privilege by alleging that "[t]he actions of Defendant were performed without justification based on the legitimate interests of [Defendant], and were performed maliciously, " which actions, as will be explained shortly, would not be covered by the privilege of competition. Accordingly, the trial court did not err by considering the privilege of competition despite defendant's assertion of that privilege for the first time in its motion for summary judgment.

We now consider the application of the privilege in this case. Section 767 of the Restatement (Second) of Torts defines the factors to be considered in determining whether interference is improper as follows:

"In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors:

(a) the nature of the nature of the actor's conduct,

(b) the actor's motive,

(c) the interests of the other with which the actor's conduct interferes,

(d) the interests sought to be advanced by the actor,

(e) the social interests in protecting the freedom of action of the actor and the

contractual interests of the other,

(f) the proximity or remoteness of the actor's conduct to the interference and

(g) the relations between the parties." Restatement (Second) of torts

§767 (1979).

Section 768 of the Restatement (Second) of Torts develops the last factor providing:

"(1) One who intentionally causes a third person not to enter into a prospective contractual relation with another *** does not interfere improperly with the other's relation if

(a) the relation concerns a matter involved in the competition between the actor

and the other and

(b) the actor does not employ wrongful means and

(c) his action does not create or continue an unlawful restraint of trade and

(d) his purpose is at least in part to advance his interest in competing with the

other." Restatement (Second) of Torts §768 (1979).

Considering the foregoing factors, it is apparent that defendant's actions fall within the privilege of competition, as defendant lawfully competed with plaintiff over the subject property in an open real estate market. "The privilege to engage in business

10

and to compete allows one to divert business from one's competitors generally as well as from one's particular competitors provided one's intent is, at least in part, to further one's business and is not solely motivated by spite or ill will." *Soderlund Brothers, Inc.*, 278 Ill. App. 3d at 615. A review of the record reveals that after plaintiff's relationship with Kariodimedjo soured, Kariodimedjo sought the help of a broker to effectuate the sale of the subject property. Defendant's motive in listing the subject property and later effectuating a sale of the subject property was motivated by its desire to acquire a commission for its efforts. Nothing in the record suggests that defendant's motives were out of spite or ill will for plaintiff.

Plaintiff then contends that even if defendant's actions were privileged, Offord's statement to the Kariodemedjos that the subject property was worth over $400,000 constituted unprivileged competition because Offord's gross overstatement of the value of the property was fraudulent and was intended to deter Kariodimedjo from consummating transfer of the subject property to plaintiff. "Acts of competition, which are never privileged include fraud, deceit, intimidation, or deliberate disparagement." *Soderlund Brothers, Inc. v. Carrier Corp.*, 278 Ill. App. 3d 606, 616 (1995); see also generally Restatement (Second) of Torts §767, Comment (B), at 28-29 (1979) (the determination of whether an act is improper is determined in each case; physical violence, fraudulent misrepresentation and threats of illegal conduct are ordinarily wrongful means). "A representation is fraudulent when, to the knowledge or belief of its utterer, it is false in the sense in which it is intended to be understood by the recipient."

11

*Soderlund Brothers, Inc.*, 278 Ill. App. 3d at 619. "There is no liability for interference with a prospective [business] relation on the part of one who merely gives truthful information to another." *Soderlund Brothers, Inc.*, 278 Ill. App. 3d at 620. Furthermore, "[m]atters of fact are distinguishable from expressions of opinion, and the latter cannot form the basis of an action of fraud." *Soderlund Brothers, Inc.*, 278 Ill. App. 3d at 620.

This court cannot say that Offord's statement to Kariodimedjo that the subject property was worth more than $400,000 was fraudulent. Firstly, Offord's statement only constituted an *opinion* as to the worth of the subject property. By virtue of his employment as a real estate broker, Offord was required to express his opinion as to the worth of his client's property; here, Kariodimedjo. *Letsos v. Century 21-New West Realty*, 285 Ill. App. 3d 1056, 1067 (1996) (a broker owes a duty to disclose all material terms of a transaction to his principal). Secondly, this court cannot say that Offord grossly overstated the value of the subject property, as his opinion was based on comparables in the area surrounding the subject property. After reviewing a list of the comparables Offord based his opinion on, contained in the record of this case, it seems Offord's valuation was not impermissible. Offord expressly relied on the sale of a home located at 4050 Enfield Avenue. That property sold for $370,000 in August of 2002. Offord states in his affidavit that his opinion was that the Kariodemedjos' home should sell for between $400,000 and $430,000, because their home was larger than 4050 Enfield Avenue and had the extra amenity of a finished basement. Furthermore, plaintiff's argument that Offord's valuation was a gross overstatement of the value of the

12

property is belied by the fact that the property actually sold for $385,000 a year and a half later.

Despite the foregoing, plaintiff argues that defendant's conduct in this case was not privileged because defendant was not a *bona fide* competitor of plaintiff. Plaintiff appears to argue that defendant owed him a duty of good faith to not interfere with his prospective business advantage because a broker did not represent plaintiff. For this proposition, plaintiff cites to cases that assert the general duties a broker owes to his principal. However, plaintiff has not cited to a single authority that supports plaintiff's argument that a broker owes a duty of good faith to an unrelated third party, and indeed, this court's own research reveals none. Accordingly, plaintiff's argument must fail.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

CAHILL, P.J., and GARCIA, J., concur.