FIRST DIVISION
FILED: February 16, 2011

No. 1-10-2893

| | | |
|---|---|---|
| In re B.G., a minor, | ) | Appeal from the |
| | ) | Circuit Court of |
| Respondent-Appellant, | ) | Cook County. |
| | ) | |
| (THE PEOPLE OF THE STATE OF | ) | |
| ILLINOIS, | ) | |
| | ) | |
| Petitioner, | ) | No. 05 JA 00344 |
| | ) | |
| v. | ) | |
| | ) | |
| Anne G., | ) | Honorable |
| | ) | Mary L. Mikva, |
| Respondent-Appellee). | ) | Judge Presiding. |

JUSTICE HOFFMAN delivered the judgment of the court, with opinion.
Justices Lampkin and Rochford concurred in the judgment and opinion.

## OPINION

The office of the Cook County public guardian (Public Guardian), acting on behalf of B.G., appeals from the circuit court's decision to vacate, pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2008)), its prior judgment terminating the parental rights of Anne G., B.G.'s natural mother.[1] For the reasons that follow, we reverse the judgment of the circuit court.

Our analysis of the issues presented requires consideration of the facts and procedural history of the termination proceedings and

_____

[1] The State's motion for leave to adopt the brief filed by the Public Guardian on behalf of B.G. was granted on January 26, 2011.

No. 1-10-2893

Anne G.'s prior appeal. The record establishes that on April 1, 2005, the State filed a petition for adjudication of wardship, alleging that B.G. was neglected because he was not receiving the necessary and proper care as required by law. According to the petition, Anne G. was currently incarcerated and had left B.G. without an adequate care plan. Following an adjudicatory hearing, B.G. was found to be neglected, and a dispositional order was entered, finding that Anne G. was unable to care for B.G., adjudicating him a ward of the court, and placing him in the guardianship of the Department of Children and Family Services (DCFS). After conducting a permanency hearing, the court entered an order setting the goal of returning B.G. home within 12 months. Following a second permanency hearing in December 2006, the circuit court found that Anne G. had made no real progress toward the goal of returning B.G. home, and the permanency goal was changed to substitute care pending termination of parental rights. The State filed a petition for termination of parental rights on June 25, 2007.

When the matter came before the court for the termination hearing on August 11, 2008, Anne G. was not present. Her attorney, an assistant public defender, requested a continuance and indicated that he "knew" that she was aware of the hearing date because she had been in contact "with the agency." He further indicated that he had attempted to contact Anne G. but her telephone number was no longer in use, and he speculated that Anne G. had a new telephone

2

number. The court denied the request for a continuance because there was no specific reason for Anne G.'s absence.

At the termination hearing, the court heard testimony from Ebony Bradford, the social worker who was assigned to B.G.'s case, and from Terria Dunlap, Bradford's supervisor. The testimony of these witnesses indicated that in July 2005, Anne G.'s service plan included referrals for substance abuse treatment, random drug testing, psychological and psychiatric evaluations, individual therapy, parent-child therapy, parenting classes, and domestic violence classes. However, as of March 12, 2006, Anne G. had not provided the agency with proof that she had completed any of these services. Though Anne G. acted appropriately and brought food or gifts during her supervised visits with B.G., the frequency of those visits was characterized as less than satisfactory because Anne G. did not attend more than 50% of the scheduled visits. In addition, Anne G. had been incarcerated on three separate occasions: from September 2005 to October 2005, from January 2006 to March 2006, and from April 2007 to October 2007. During those periods of incarceration, Anne G. chose not to request visits with B.G. because she did not want her son to see her in that environment.

As of December 2006, Anne G. had completed a 30-day inpatient substance abuse program and was required to participate in an outpatient program, obtain a sponsor, attend Narcotics Anonymous (NA) and Alcoholics Anonymous (AA) meetings, and submit to random

drug testing. According to Bradford and Dunlap, Anne G. did not provide any proof that she had achieved these goals. The testimony of these witnesses also indicated that Anne G. had complied with less than 50% of the random drug tests and that at least 90% of the tests she did complete were positive for either cocaine, opiates, or a combination of both. As of the date of the termination hearing, Anne G. still needed to address her substance abuse issues, attend individual therapy, attend parent-child therapy, obtain a sponsor, attend NA/AA meetings, complete psychological and psychiatric evaluations, attend parenting classes, and make herself available for random drug testing.

Though Dunlap was aware that Anne G. had received treatment for depression from Dr. Menezes at Riverside Hospital, Dunlap had been unable to contact the doctor, and Anne G. had not provided proof that she had been treated by Dr. Menezes during the previous two or three years. Dunlap testified that Anne G. was required to address her substance abuse issues before she could participate in other services, including mental health services. In addition to the testimony of Dunlap and Bradford, the court admitted into evidence certified copies of conviction establishing that Anne G. had one conviction for forgery (720 ILCS 5/17-3(a)(2) (West 2004)) and two separate convictions for possession of a controlled substance (720 ILCS 570/402(c) (West 2004)).

At the conclusion of the termination hearing, the circuit court found Anne G. to be unfit based on her failure to make

4

reasonable efforts to correct the conditions which were the basis for B.G.'s removal or make reasonable progress toward B.G.'s return (750 ILCS 50/1(D)(m)(i)(ii) (West 2006)); her failure to maintain a reasonable degree of interest, concern, or responsibility in the welfare of B.G. (750 ILCS 50/1(D)(b) (West 2006)); and her inability to discharge her parental responsibilities because of her repeated incarceration (750 ILCS 50/1(D)(s) (West 2006)). Following a best interest hearing, the circuit court found that it was in B.G.'s best interest to terminate Anne G.'s parental rights and appoint a guardian with the right to consent to adoption.

On September 5, 2008, Anne G. filed a *pro se* notice of appeal. Her opening brief, which was filed by an assistant public defender, did not argue that she had never received notice of the termination hearing. After the State filed its response brief, Anne G. hired private counsel to prepare and file her reply brief, which raised the issue of lack of notice for the first time. On January 29, 2009, this court affirmed the circuit court's termination of Anne G.'s parental rights, but declined to address the merits of the lack-of-notice issue, finding that it had been forfeited by the failure to raise it in her opening brief. See *In re B.G.*, No. 1-08-2493 (2009) (unpublished order under Supreme Court Rule 23). Anne G. thereafter filed a petition for leave to appeal (PLA) to the supreme court. The PLA was denied on April 3, 2009, and her request for leave to file a motion to reconsider was denied on May 7, 2009.

5

On June 9, 2009, Anne G. filed a section 2-1401 petition to vacate the termination of her parental rights, asserting that she could satisfy the criteria necessary for postjudgment relief, including a meritorious defense in the original action, due diligence in presenting that defense, and due diligence in filing the petition. In particular, Anne G. asserted that because she had not received notice of the termination hearing that was conducted on August 11, 2008, her failure to appear and present evidence at the hearing was excusable. She further asserted that, if she had been notified of the hearing, she would have been able to introduce evidence establishing that she was a fit parent for B.G.

In support of her petition, Anne G. filed an affidavit attesting that her trial attorney did not give her notice of the termination hearing and that, if he had done so, she would have appeared and rebutted the charges of unfitness. Anne G.'s affidavit set forth in detail the nature of the evidence that she would have presented at the termination hearing.

The State filed a motion to dismiss and a response to the section 2-1401 petition. The Public Guardian responded to the petition on behalf of B.G. and contended that the law-of-the-case doctrine barred Anne G.'s attempt to relitigate the same notice issue ruled on by the appellate court. The Public Guardian also asserted that Anne G. had failed to allege evidence of a meritorious defense. Anne G. filed a reply and submitted a supplemental affidavit in support thereof.

The circuit court bifurcated the postjudgment proceedings and conducted separate evidentiary hearings on the issues of whether Anne G. had exercised due diligence and whether she could have presented evidence of a meritorious defense to the charges of unfitness. The court found that Anne G. had exercised due diligence in defending the termination proceeding and in bringing the section 2-1401 petition and that she had presented sufficient evidence to establish that she had a meritorious defense to the termination petition. Accordingly, the court granted Anne G.'s petition for postjudgment relief. This appeal followed.

The Public Guardian claims that the circuit court erred in failing to find that, because the termination of Anne G.'s parental rights had been affirmed on direct appeal, she was precluded from raising the issues asserted in her section 2-1401 petition. We must agree.

Under the doctrine of *res judicata*, a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action. *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467, 889 N.E.2d 210 (2008); *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 334, 665 N.E.2d 1199 (1996). *Res judicata* bars not only what was actually decided in the first action, but also whatever could have been decided. *Hudson*, 228 Ill. 2d at 467. Three requirements must be satisfied for *res judicata* to apply: (1) the rendition of a final judgment on the merits by a court of competent

7

jurisdiction; (2) the existence of an identity of cause of action; and (3) the parties or their privies are identical in both actions. *Hudson*, 228 Ill. 2d at 467.

In this case, the circuit court terminated Anne G.'s parental rights after conducting a full evidentiary hearing, and this court affirmed that judgment on the merits in resolving the direct appeal. See *In re B.G.*, No. 1-08-2493 (2009) (unpublished order under Supreme Court Rule 23). Thereafter, Anne G. filed a petition for postjudgment relief, challenging the circuit court's prior judgment of unfitness and the best interest of B.G. The substantive contentions asserted in the section 2-1401 petition are identical to the issues decided in the termination proceeding, and the parties to both proceedings are the same. Under these circumstances, the doctrine of *res judicata* precluded any further litigation of Anne G.'s unfitness or the best interest of B.G. See *Hudson*, 228 Ill. 2d at 467. Consequently, the circuit court erred in granting Anne G.'s petition for postjudgment relief.

As a final matter, we observe that the Public Guardian argued in the circuit court and on appeal that the doctrine of law of the case barred Anne G. from raising the issues asserted in her section 2-1401 petition. Under the law-of-the-case doctrine, a court's unreversed decision on an issue that has been litigated and decided on appeal settles the question for all subsequent stages of the action. *Miller v. Lockport Realty Group, Inc.*, 377 Ill. App. 3d 369, 374, 878 N.E.2d 171 (2007). We note, however, that, because

8

No. 1-10-2893

a section 2-1401 petition initiates a separate action, (*Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 102, 776 N.E.2d 195 (2002)), the contentions raised in Anne G.'s petition for postjudgment relief are barred by *res judicata*, rather than the doctrine of law of the case. Though the Public Guardian cited the doctrine of law of the case in opposing the section 2-1401 petition, its argument on the question of preclusion was sufficiently preserved and not forfeited for purposes of appeal.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

Reversed.