NOTICE

Decision filed 11/10/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 190387-U

NO. 5-19-0387

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| THERSIA K. SWEET, | ) | Madison County. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | No. 03-D-1119 |
| and | ) | |
| | ) | |
| STEPHEN K. SWEET, | ) | Honorable |
| | ) | Ronald J. Foster Jr., |
| Respondent-Appellee. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE WELCH delivered the judgment of the court.
Justices Moore and Overstreet concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's order dismissing the appellant's petition for relief from judgment pursuant to 735 ILCS 5/2-1401 (West 2012) is affirmed where the appellant's claims are barred by the doctrine of *res judicata* and where she has failed to establish she is entitled to relief.

¶ 2    This is an appeal arising from an order of the circuit court of Madison County granting the appellee, Stephen K. Sweet's, motion to dismiss the appellant, Thersia K. Sweet's, petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2012)).  For the reasons that follow, we affirm.

1

¶ 3                              I. BACKGROUND

¶ 4      The parties were married in May 1998.  There were no children born of the marriage.

Prior to the marriage date, the parties entered into a prenuptial agreement, which, *inter alia*,

defined what was to be considered marital and nonmarital property.  The parties separated

in September 2003, and the appellant filed a petition for dissolution of marriage on October

15, 2003.  The dissolution proceedings were highly contested, with the trial consisting of

many weeks of testimony over an extensive period of time.

¶ 5      On January 28, 2008, the trial court entered a judgment of dissolution of marriage

with respect to grounds only.  On May 23, 2008, the court entered a supplemental judgment

of dissolution that disposed of all remaining issues, including a finding that the prenuptial

agreement was valid, enforceable, and controlling with respect to all property issues.  The

court also entered findings related to the interpretation of the prenuptial agreement;

especially relevant here are its findings as to the appellee's alleged dissipation of assets

and what was considered marital versus nonmarital property.  Pursuant to the dissolution

judgment, the appellant was awarded, *inter alia*, $60,000 maintenance in gross, $35,000 in

attorney fees, one-half the value of two motorcycles and an Edward Jones account, a Dodge

Viper automobile, a bedroom suite, china, silverware, and crystal.  Upon a motion to

reconsider, the court awarded the appellant an additional $45,000 in attorney fees.  The

appellant appealed, and this court affirmed the trial court's finding that the prenuptial

agreement was valid and enforceable as well as its interpretation of the agreement relating

to marital versus nonmarital property in *In re Marriage of Sweet*, 2012 IL App (5th)

080382-U.

¶ 6    While the appellant's first appeal was pending, the appellee was charged with one count of tax evasion pursuant to 26 U.S.C. § 7201 (2012) relating to his 2005 income tax return.[1]  On June 21, 2012, the appellee entered a guilty plea pursuant to a written plea agreement and stipulation of facts.  See *United States v. Sweet*, No. 11-CR-30194-MJR (S.D. Ill. June 21, 2012).  In part, the appellee stipulated to the fact that he knowingly filed a false and fraudulent U.S. Individual Tax Return and that he falsely reported total income on his 2005 tax return as being a loss of $70,836 although he knew his total taxable income for that year was substantially in excess of that amount.  The appellee further admitted that he "diverted business funds to his own personal use without declaring those amounts as income."  During the appellee's sentencing hearing, his counsel argued that the appellee diverted the relevant funds not to avoid paying taxes, but because of the parties' ongoing dissolution proceedings.

¶ 7    On January 15, 2013, the appellant filed a petition for relief from the dissolution judgment pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2012)).  The appellant alleged that the appellee committed fraud upon the court as to his assets, and that she was entitled to a new trial on all issues including maintenance and property division.  On February 14, 2013, the appellee filed a motion to dismiss the appellant's petition.  The appellee's motion to dismiss laid out several arguments in support of dismissal, including: the continuing effect of the parties' valid and enforceable prenuptial agreement; that

---

[1]The appellee was also charged with one count of making an illegal payment pursuant to 18 U.S.C. § 201(c)(1) (2012).  This charge related to his act of giving money to a car dealer on behalf of a public official in order to keep and obtain contracts for his business to provide services on Scott Air Force Base.  It is not relevant to the parties' dissolution proceedings and will not be discussed any further.

3

allegations of perjury were insufficient to warrant relief; that the appellant's petition was barred under the doctrines of release of errors, waiver, estoppel, ratification, law of the case, and *res judicata*; that the petition was untimely; and that the appellant failed to exercise due diligence in filing it.

¶ 8    The trial court held hearings on November 18, 2015, and on March 14, 2016, pertaining to the appellant's section 2-1401 petition and the appellee's motion to dismiss. After the second hearing, the trial was suspended to permit additional limited discovery by the appellant.

¶ 9    On June 6, 2019, after more than six years of additional discovery and hearings, the trial court granted the appellee's motion to dismiss the appellant's section 2-1401 petition. The appellant subsequently filed a motion to reconsider and an amended motion to reconsider. On August 7, 2019, the court denied both motions. The appellant appeals.

¶ 10                                II. ANALYSIS

¶ 11    The purpose of a section 2-1401 petition is to bring before the trial court facts not appearing in the record which, if known to the court at the time judgment was entered, would have prevented entry of the judgment. *In re Marriage of Johnson*, 339 Ill. App. 3d 237, 241 (2003). Section 2-1401 was never intended to give petitioner a new opportunity to do that which should have been done in an earlier proceeding or to relieve petitioner of the consequences of her mistakes or negligence. *In re Marriage of Labuz*, 2016 IL App (3d) 140990, ¶ 35. The section 2-1401 petition must set forth specific factual allegations supporting the following three elements: (1) the existence of a meritorious claim or defense, (2) due diligence in presenting this claim or defense to the trial court in the original

4

action, and (3) due diligence in filing the section 2-1401 petition. *In re Marriage of Callahan*, 2013 IL App (1st) 113751, ¶ 17. A section 2-1401 petition is subject to a motion to dismiss where it fails to state a cause of action or shows on its face that petitioner is not entitled to relief. *In re Marriage of Buck*, 318 Ill. App. 3d 489, 493 (2000). Thus, a motion to dismiss a section 2-1401 petition is to be considered in the same manner as a civil complaint. *Id*.

¶ 12 The appellant argues that the trial court erred in dismissing her section 2-1401 petition. As previously stated, the appellee's motion to dismiss set forth several reasons why the appellant's petition should be dismissed. We note that the appellee failed to specify under which statute he brought his motion to dismiss and has taken inconsistent positions about the matter on appeal. The appellant has not challenged the form of the motion or asserted that she was prejudiced by this failure. For ease of analysis, however, we will first determine, based on the substance of the allegations set forth in the appellee's motion, whether it was filed under section 2-615, section 2-619, or section 2-619.1 of the Code. See *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 54; *Betts v. City of Chicago*, 2013 IL App (1st) 123653, ¶ 12; *Loman v. Freeman*, 375 Ill. App. 3d 445, 448-49 (2006) (the substance of a motion, not its title, determines how a court should treat it).

¶ 13 A motion to dismiss pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2012)) attacks the legal sufficiency of the petition. *Chandler v. Illinois Central R.R. Co.*, 207 Ill. 2d 331, 348 (2003). Section 2-615 motions do not raise affirmative factual defenses but only allege defects appearing on the face of the petition. *Id*. In ruling on a section 2-615 motion to dismiss, the question is whether the petition's allegations, when viewed in

5

the light most favorable to petitioner, are sufficient to state a cause of action upon which relief can be granted. *Id.* When making this determination, the trial court should only consider the allegations in the pleadings. *Id.* at 349.

¶ 14    In contrast, a section 2-619 motion seeks involuntary dismissal of a cause of action based on certain defects or defenses. *Borowiec v. Gateway 2000, Inc.*, 209 Ill. 2d 376, 383 (2004). Amongst the enumerated grounds for a section 2-619 dismissal are that the cause of action is barred by a prior judgment (735 ILCS 5/2-619(4) (West 2012)), that it was untimely (*id.* § 2-619(5)), or that the claims asserted have been released, satisfied, or discharged (*id.* § 2-619(6)). An affirmative matter that is not apparent on the face of the pleading attacked must be supported by an affidavit, and in ruling on the motion, the trial court should interpret all pleadings and supporting documents in the light most favorable to the nonmoving party. *Borowiec*, 209 Ill. 2d at 383. A ruling on a section 2-619 motion is reviewed *de novo*. *Id.*

¶ 15    Section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2012)) permits the filing of a combined motion for involuntary dismissal under both sections 2-615 and 2-619. Section 2-619.1 provides that combined motions shall be in parts, and that each part shall be limited to and specify under what section it is made and shall clearly show the grounds relied upon. *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 20. Our review of a combined motion to dismiss pursuant to section 2-619.1 is *de novo*. *McGee v. Snyder*, 326 Ill. App. 3d 343, 347 (2001). Where a dismissal is proper as a matter of law, the trial court may be affirmed on any basis supported by the record. *Rodriguez v. Illinois Prisoner Review Board*, 376 Ill. App. 3d 429, 433 (2007).

6

¶ 16    In this case, the appellee's motion to dismiss alleged grounds for dismissal under both sections 2-615 and 2-619. The parts of the motion attacking the appellant's petition based on release of errors, waiver, estoppel, ratification, law of the case, *res judicata*, and timeliness alleged grounds for dismissal under section 2-619. See 735 ILCS 5/2-619(4)-(6) (West 2012). On the other hand, the appellee's arguments that the parties' prenuptial agreement defeated the appellant's allegations, that her allegations of perjury were insufficient to warrant relief, and that the appellant failed to exercise due diligence in filing her petition all attacked the legal sufficiency of the complaint. See *id.* § 2-615; *Chandler*, 207 Ill. 2d at 348; see also *Callahan*, 2013 IL App (1st) 113751, ¶ 17 (providing the pleading requirements for a section 2-1401 petition). Therefore, because the substance of the appellee's motion to dismiss indicates that it was a combined motion under section 2-619.1, we will address it as such. See *Sandholm*, 2012 IL 111443, ¶ 54; *Betts*, 2013 IL App (1st) 123653, ¶ 12; *Loman*, 375 Ill. App. 3d at 448-49 (similarly finding).

¶ 17    Turning to the merits of the appellee's motion, we first address his assertion that the appellant's section 2-1401 petition should be dismissed on the grounds of *res judicata*,[2] because it is dispositive of the majority of the appellant's claims. The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction acts as an absolute bar to a subsequent action between the same parties or their

_____

[2]We note that the appellee has cited both *res judicata* and the law of the case doctrine in his motion to dismiss and appellate brief. However, because this case arises from the appellant's filing of a section 2-1401 petition, which is considered a separate action, the relevant inquiry is whether *res judicata* applies to bar her claims. See *In re B.G.*, 407 Ill. App. 3d 682, 687 (2011) (similarly finding). Because the law of the case doctrine is not applicable here, it will not be discussed any further.

privies on the same cause of action. *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467 (2008). *Res judicata* not only bars what was actually decided in the first action but also what could have been decided in that action. *Id.* For the *res judicata* doctrine to apply, three requirements must be met: (1) a final judgment on the merits has been rendered by a court of competent jurisdiction, (2) an identity of cause of action exists, and (3) the parties or their privies are identical in both actions. *Id.* Whether *res judicata* applies to the appellant's petition is a question of law that is reviewed *de novo*. *Taylor v. Police Board of the City of Chicago*, 2011 IL App (1st) 101156, ¶ 19 (citing *Arvia v. Madigan*, 209 Ill. 2d 520, 526 (2004)).

¶ 18    In this case, the trial court rendered a final judgment after conducting a full evidentiary hearing, and this court affirmed that judgment on the merits in resolving the direct appeal. See *Sweet*, 2012 IL App (5th) 080382-U. As such, a final judgment has been rendered by a court of competent jurisdiction. Thereafter, the appellant filed a petition for postjudgment relief, requesting a new trial on the issues of property division and maintenance in light of facts that allegedly came to light during the appellee's criminal proceedings. The parties are identical in both actions. Thus, the first two requirements have been satisfied here.

¶ 19    Upon reviewing the record, we find that most of the substantive contentions asserted in the appellant's section 2-1401 petition are identical to issues resolved during the parties' dissolution proceedings, especially in light of our prior interpretation of the parties' prenuptial agreement. The appellant initially asserted in her petition that the appellee knowingly filed a false and fraudulent 2005 tax return and that he diverted business funds

8

to his own personal use without declaring them as income. However, the exhibits attached to the appellee's motion to dismiss reveal that the appellee's questionable tax practices were litigated *ad nauseum* during the parties' dissolution proceedings. Not only were the parties themselves questioned about the appellee's taxes, but other witnesses including accountants and the appellant's expert witness testified about various issues related to the appellee's taxes, his use of business property for personal benefits, and his failure to declare such benefits as income. The appellant herself admitted that she was aware the appellee "paid the taxes from one of his companies and then did not claim it on his income taxes."

¶ 20 After hearing the relevant testimony, the trial court discussed the issue of the appellee's taxes in rendering its dissolution judgment. This judgment was affirmed on appeal. Also during the prior appeal, the appellant argued that "since increase in value resulted from [her] personal efforts, the possible millions of dollars that Stephen diverted from his nonmarital corporations' retained earning [*sic*] should properly be considered part of the marital estate and subject to distribution by the court." *Id*. ¶ 35. We rejected this argument, holding that nonmarital property as defined by the parties' prenuptial agreement "clearly includes income. In order to qualify as dissipation by a party, the funds so expended must properly be part of the marital estate. The trial court found, and we agree, that that is not the situation in the instant case." *Id*. ¶ 37. This ruling is *res judicata* and leads us to conclude that even if the appellee had filed a tax return reflecting the accurate amount of taxable income, it would not have been divided or have otherwise affected the outcome as to property division or maintenance. Therefore, the appellant is not entitled to relief based on the fact that the husband filed a false tax return and diverted business funds

9

for his own personal use without declaring them as income because the claim was barred by a prior judgment. See 735 ILCS 5/2-619(4) (West 2012); see also *Buck*, 318 Ill. App. 3d at 493.

¶ 21 The appellant also alleged that the appellee failed to disclose and affirmatively denied ownership of a boat. As with the appellee's taxes, the matter of his boat ownership was litigated at length during the parties' dissolution proceedings. The transcripts establish that the appellee's businesses, not the appellee personally, owned all his boats. The Internal Revenue Service criminal investigation report confirmed this with respect to the Platinum boat at issue here, stating that it was purchased in the name of one of the appellee's businesses and bought with that business's money.

¶ 22 Further, several witnesses testified as to the consequences that the appellee could face if he were incorrectly accounting for his boats and expenses related to them. Charles Tzinberg, an expert accountant testifying on behalf of the appellant, concluded that because the boats were used for personal rather than business purposes, they would be treated as income to the appellee. Brian Shaw, an accountant who worked with the appellee, admitted that if his boats were "disallowed because they are for personal use and were not for business purposes," they would be added to the appellee's income. The appellant's counsel also argued that if the boats were declared to not be legitimately deducted as a business expense, then they would be considered income. Under the parties' prenuptial agreement and our prior judgment, however, the appellee's income is nonmarital property not subject to division. See *Sweet*, 2012 IL App (5th) 080382-U, ¶¶ 34-37. Accordingly, *res judicata* bars the appellant's claim that she is entitled to relief based on the fact that he failed to

declare a boat, because it has already been determined that under the parties' prenuptial agreement, the boat was either nonmarital property owned by the appellee's businesses or nonmarital property in that it would be considered income to the appellee. Therefore, the appellant is not entitled to relief based on the fact that the appellee failed to disclose the existence of a boat because the claim was barred by a prior judgment. See 735 ILCS 5/2-619(4) (West 2012); see also *Buck*, 318 Ill. App. 3d at 493.

¶ 23    The appellant's next contention was that the appellee "now admits that he lied about expenses for false assets including what is described as 'False Asset #66 Trackhoe Depreciation,' payments to 'Thomas Company,' 'T&E Rental' and 'Asbestos Material' which caused a corrected taxable income. This new income figure is almost $687,000.00 more than he claimed on his tax returns for the period from 2005 – 2008." The transcripts reveal, however, that witnesses testified about the Thomas Construction Company and trackhoe depreciation during the parties' dissolution proceedings. The appellant, who worked for the appellee's businesses for a period of time during the marriage, was questioned as to whether Thomas Construction Company performed any construction services in exchange for all the money that was allegedly paid to them by the appellee's businesses. Her attorney then argued that Thomas Construction Company was a fake business because there were no contracts disclosed during discovery surrounding any deals between it and the appellee's businesses. Similarly, Shaw testified that he was not aware of any business relationship with or services provided to appellee's companies from Thomas Construction Company in 2004. The appellant's attorney again argued that Thomas Construction Company did not exist, it was a shell company, or if it did exist,

11

something was misrecorded, and the funds were diverted for personal use. There was apparently no documentation to show that Thomas Construction Company existed or that checks allegedly written to them were cashed.

¶ 24    Nevertheless, we find that this allegation is a mere restatement of the appellant's argument that the appellee disclosed a false income amount. But even assuming the truth of this allegation, the corrected taxable income does not provide the appellant with a meritorious defense as the appellee's income was nonmarital property not subject to division pursuant to the parties' prenuptial agreement and our prior judgment. See *Sweet*, 2012 IL App (5th) 080382-U, ¶¶ 34-37. Therefore, this claim is barred by *res judicata* and our prior judgment, and the appellant is not entitled to relitigate the issue by way of a section 2-1401 petition. 735 ILCS 5/2-619(4) (West 2012); see *Hudson*, 228 Ill. 2d at 467.

¶ 25    The appellant additionally claimed that "[t]o the extent that the Court relied upon the Husband's credibility as to issues of income and property, the Judgment was based upon information that the Husband now admits is fraudulent." We find this allegation fails for two reasons. First, we note that the appellee's credibility was constantly at issue during the parties' dissolution proceedings as it was argued that he falsified his taxes, dissipated marital assets, and committed fraud. As previously stated, the trial court considered these issues in rendering its dissolution judgment. However, the court ultimately found that dissipation only pertains to marital assets and that the appellee's income from his businesses was not marital property. These findings were affirmed by our court on appeal and constitute *res judicata*. See *Sweet*, 2012 IL App (5th) 080382-U, ¶ 37.

12

¶ 26 Second, much of the trial court's decision came down to its interpretation of the parties' prenuptial agreement, not the appellee's credibility. As this court previously found:

> "The lynchpin of this litigation is the validity of the parties' prenuptial agreement ***. The prenuptial agreement is the basis upon which the circuit court made its decisions and assignments as to marital and nonmarital property and the subsidiary issues of the increase in value of those properties, by either business activity or personal efforts of Thersia. The validity of the prenuptial agreement also determined whether, in the course of his financial dealings, Stephen transmuted or dissipated the marital estate; if the various expenditures by Stephen were made from nonmarital property, there was by definition no dissipation of the marital estate." *Id.* ¶ 22.

Accordingly, we find that the appellee's credibility was not material to the prior courts' decisions and any alleged perjury would not have provided the appellant with a meritorious defense. As with the prior claims, the appellant here wishes to relitigate matters that have already been contemplated by the trial court and affirmed by this court on appeal, which is not a proper use of section 2-1401. Because this claim was barred by a prior judgment, it was properly dismissed. See 735 ILCS 5/2-619(4) (West 2012); see also *Buck*, 318 Ill. App. 3d at 493.

¶ 27 Lastly, we address the appellant's contention related to "real estate located at 3938 Sequoia Drive, Edwardsville, Illinois held by an entity known as ERS Development LLC which was actually created by the Husband to shield his true ownership from the divorce Court." We find this allegation, even when viewed in the light most favorable to the appellant, is insufficient to establish that she is entitled to relief. See *Chandler*, 207 Ill. 2d at 348; 735 ILCS 5/2-615 (West 2012). The allegation itself reveals that the property in question was owned by ERS Development, LLC, and as such, it was not owned by the

appellee personally, would not have been considered marital property under the parties' prenuptial agreement, and therefore would not have been subject to division during the parties' dissolution proceedings. Accordingly, the existence of this property did not provide the appellant with a meritorious claim, and dismissal was proper where she was not entitled to relief based on this allegation. See *Buck*, 318 Ill. App. 3d at 493.

¶ 28 In conclusion, we find that the claims asserted in the appellant's section 2-1401 petition for relief from the dissolution judgment are either barred by a prior judgment or fail to establish that the appellant is entitled to relief. Based on the foregoing, the trial court did not err in granting the appellee's motion to dismiss.

¶ 29 III. CONCLUSION

¶ 30 The order of the circuit court of Madison County is hereby affirmed.

¶ 31 Affirmed.

14