*In re* MARRIAGE OF SHEILA A. JOHNSON, Petitioner-Appellant, and GORDON B. JOHNSON, Respondent-Appellee.

Second District   No. 2—02—0453

Opinion filed May 19, 2003.

Kenneth E. Poris, of Kenneth E. Poris, P.C., of Somonauk, for appellant.

Richard D. Larson, of Sycamore, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

On March 7, 2000, the circuit court of De Kalb County entered a judgment dissolving the marriage of petitioner, Sheila A. Johnson (Sheila), and respondent, Gordon B. Johnson (Gordon). The judgment incorporated a separation agreement that provided for the disposition of the parties' property. Almost 20 months later, on November 1, 2001, Gordon filed a petition under section 2—1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2—1401 (West 2000)) to vacate the judgment. Sheila appeals from the trial court's order granting the petition. We affirm.

The separation agreement recited that Gordon earned $46,000 annually and Sheila's annual income was $15,000. The agreement further recited that both parties were equally capable of supporting and maintaining themselves and that they waived all claims for maintenance and all claims to each other's nonmarital property. The agreement provided, *inter alia*, that the marital residence, worth approximately $130,000, would be assigned to Sheila and that Gordon would pay Sheila $450 per week for 176 months. Gordon would retain his pension. The $450 weekly payment was designed to compensate Sheila for releasing any claim against Gordon's pension and for paying off a $45,000 home equity loan secured by the marital residence. Other terms of the agreement providing for the disposition of the parties' motor vehicles, household furnishings, personal belongings, and bank accounts need not be described here.

The matter proceeded to a prove-up. Sheila was represented by attorney Roger W. Hayes, and Gordon appeared *pro se*. At the outset, the trial court asked Gordon whether he was represented by an attorney. Gordon responded that he and Sheila had visited Hayes together. The court then advised Gordon that Hayes represented only Sheila and that his position was adverse to Gordon's. The court asked Gordon whether he chose to represent himself, and Gordon said that he did. The court also asked Gordon, "You understand that we're gonna do things here this morning that affect your legal rights on a permanent irrevocable basis?" Gordon replied affirmatively.

Sheila testified that she was 49 years old and was employed as the Sandwich Township assessor. Gordon was 50 years old and was employed as an assembler at the Caterpillar factory. The parties were married in 1971 and had three children: 26-year-old Ryan, 22-year-old Jeffrey, and 19-year-old Stacey. Sheila identified the separation agreement and testified that she had entered into it freely and voluntarily, she had fully disclosed her assets to Gordon, and she believed Gordon had also made full disclosure to her. She also reaffirmed her waiver of maintenance. After Hayes completed his direct examination of Sheila, the following exchange occurred:

"THE COURT: What have they done with the pensions? I don't have a copy of the settlement agreement.

MR. HAYES: I'm sorry. (Handed up)

THE COURT: Thank you.

You're getting the house, he's getting the pension.

THE WITNESS: Yes."

Gordon testified that he signed the separation agreement on the morning of the prove-up. He testified that he had read and understood the agreement, he believed it was fair and just, and he had signed it voluntarily. Gordon confirmed that he had completely disclosed his income and assets to Sheila and he believed Sheila had completely disclosed all her income and assets.

The trial court entered a judgment dissolving the parties' marriage. The court found that the separation agreement was not unconscionable and incorporated the agreement into the dissolution judgment.

As noted, Gordon filed his section 2—1401 petition almost 20 months later. He complained, *inter alia*, that in light of the $450 weekly payments for 176 months, the separation agreement was unconscionable. Sheila moved to dismiss the petition pursuant to section 2—615 of the Code (735 ILCS 5/2—615 (West 2000)). The trial court denied the motion. Sheila filed an answer to the petition, and the matter proceeded to an evidentiary hearing at which the following salient facts were established. In 1999, after Christmas, the parties discussed ending their marriage. Sheila gave Gordon a handwritten proposal for a property settlement. Sheila proposed that Gordon pay her $450 per week. Sheila would receive the parties' home, and after repaying the home equity loan, she would release any claim to Gordon's pension. (The monthly payment on the home equity loan was $457.)

Gordon agreed to these terms, and the parties visited attorney Hayes. Sheila later gave Gordon a copy of the separation agreement to review. Gordon testified that he was unsure why the agreement provided that his weekly payments to Sheila would continue for 176 months. He stated that he thought this might correspond to the period for repaying the home equity loan. Gordon testified that he thought 176 months was an outer limit; that the weekly payments would end when the loan was paid off; and that Sheila had told him she would repay the loan as soon as possible. However, Gordon equivocated on this point, later testifying that he never really thought that the duration of his weekly payments to Sheila was related to the home equity loan.

Gordon testified that his employment benefits included a legal

services plan, and he had access to an attorney to advise and represent him in connection with the dissolution proceedings. Gordon acknowledged that he is able to read and has never been diagnosed with a learning disability. He acknowledged that he read and understood the separation agreement. The parties stipulated to the admission into evidence of a letter from an actuary stating that the present value of Gordon's pension, as of October 1, 2001, was $99,090.

The trial court concluded that the separation agreement was unconscionable. The court noted that the weekly payments had not been brought to the court's attention when it approved the agreement. This appeal followed.

■ Sheila initially argues that the trial court erred in denying her motion to dismiss Gordon's petition. In essence, Sheila argues that the allegations are vague and conclusory. According to Sheila, the petition is woefully deficient. Sheila has waived the issue.

After the trial court denied Sheila's motion to dismiss Gordon's petition, she filed an answer and the matter proceeded to an evidentiary hearing. "Generally, where a trial court denies a defendant's motion to dismiss a complaint, and that defendant elects to file an answer to the complaint, the defendant *waives* any defect in the pleading." (Emphasis in original.) *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 60 (1994). Moreover, the related doctrine of aider by verdict provides that where a defendant allows an action to proceed to a verdict, the verdict will cure not only formal and purely technical defects and clerical errors in a complaint, but will also cure any defect in failing to allege, or defectively or imperfectly alleging, any substantial facts that are essential to a right of action. *Adcock*, 164 Ill. 2d at 60-61.

■ We next consider whether the trial court erred in granting Gordon's section 2—1401 petition. "A section 2—1401 petition serves to bring before the court that rendered judgment 'facts not appearing of record which, if known to the court at the time judgment was entered, would have prevented its rendition.' " *In re Marriage of Broday*, 256 Ill. App. 3d 699, 705 (1993), quoting *In re Marriage of Travlos*, 218 Ill. App. 3d 1030, 1035 (1991). Ordinarily, the party seeking relief must have acted with diligence in the original proceedings, and relief is usually unavailable where the party negligently failed to assert a defense or make facts known to the court prior to entry of judgment. See *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 222 (1986). Relief under section 2—1401 may be available to set aside a settlement agreement that is unconscionable or was entered into because of duress, coercion, or fraud. See *In re Marriage of Hoppe*, 220 Ill. App. 3d 271, 285 (1991). Whether to award relief under section 2—1401 lies within the sound

discretion of the circuit court depending on the facts and equities presented, and a reviewing court will not disturb that decision unless it represents an abuse of discretion. *Airoom*, 114 Ill. 2d at 221.

Here, Gordon's section 2—1401 petition sought to bring the separation agreement's weekly payment provision to the trial court's attention. Of course this provision was a matter of record when judgment was entered, even though it is clear that the trial court was unaware of it. On the other hand, there was no evidence of the actuarial value of Gordon's pension in the initial dissolution proceedings. Leaving aside, for the moment, the question of Gordon's diligence, the question is whether that information, had it been known to the trial court, would have prevented rendition of the judgment incorporating the separation agreement. More specifically, section 2—1401 relief depends on whether the trial court would have found the agreement unconscionable. See 750 ILCS 5/502(b) (West 2000) ("The terms of the agreement *** are binding upon the court unless it finds *** that the agreement is unconscionable").

■ A marital settlement agreement may be found unconscionable "when it is improvident, totally one-sided or oppressive." *In re Marriage of Carlson*, 101 Ill. App. 3d 924, 930 (1981). While *Carlson* indicates that " 'unconscionability' *includes* 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party' " (emphasis added) (*Carlson*, 101 Ill. App. 3d at 930, quoting *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir. 1965)), we do not view this as meaning that the absence of a meaningful choice is the only basis for finding unconscionability. Accord *In re Marriage of Gibson-Terry*, 325 Ill. App. 3d 317, 326 (2001) (distinguishing "procedural" unconscionability from "substantive" unconscionability). Here, the agreement was so one-sided and oppressive that it was unconscionable regardless of whether Gordon had a meaningful choice.

The principal assets in the parties' marital estate were their $85,000 equity interest in the marital residence and Gordon's pension, which had a present value of about $100,000. Gordon was permitted to keep his pension, but was saddled with weekly payments totaling about $340,000 over 14²/₃ years. There is no evidence of the present value of these payments. However, it seems almost certain that, by any reasonable calculation, the present value of the weekly payments would exceed the present value of the pension. If so, it is possible Sheila would effectively receive money and other property worth *more than* the value of the marital estate.

■ This result cannot be justified on the theory that Sheila is not receiving maintenance. The $450 weekly payments were not designated

maintenance, but compensation to Sheila for paying the $45,000 home equity loan and releasing any claim to Gordon's pension. Moreover, the separation agreement specifically recites that the parties were equally capable of supporting and maintaining themselves. Sheila reaffirmed this during her prove-up testimony, and, in our view, she should not be permitted to recharacterize the weekly payments.

It remains for us to consider whether section 2—1401 relief is unavailable because Gordon was not sufficiently diligent in bringing the relevant information to the trial court's attention at the appropriate time. There appears to be no reason Gordon could not have had an actuarial analysis of his pension performed before the judgment was entered. Thus, the record tends to show that Gordon failed to act with proper diligence. However, the requirement that a section 2—1401 petitioner demonstrate diligence is not inflexible. "[W]hen justice and fairness require, a judgment may be vacated even though the requirement of due diligence has not been satisfied." *Hoppe*, 220 Ill. App. 3d at 283, citing *Airoom*, 114 Ill. 2d at 225. We believe the circumstances of this case warrant invoking this exception. The settlement agreement effectively leaves Gordon in penury. We also note that neither Sheila nor her attorney corrected the trial court's incomplete characterization of the separation agreement: "You're getting the house, he's getting the pension." Their lack of candor in this case is not so different from the circumstances in *In re Marriage of McGlothlin*, 312 Ill. App. 3d 1145 (2000), where we held that equity, justice, and good conscience required relaxing the diligence requirement and vacating a default judgment where the party who obtained the judgment failed to advise the court that the parties had previously entered into a settlement agreement. Here, as in *McGlothlin*, "[e]quity *** requires that the trial court's judgment, based as it was on misleading testimony and the unseemly suppression of evidence, be vacated." *McGlothlin*, 312 Ill. App. 3d at 1149. Accordingly, we cannot say the trial court abused its discretion in granting Gordon's petition.

For the foregoing reasons, the judgment of the circuit court of De Kalb County is affirmed.

Affirmed.

O'MALLEY and GROMETER, JJ., concur.