# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*In re Marriage of Callahan*, 2013 IL App (1st) 113751

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF MICHAEL CALLAHAN, Petitioner-Appellant, and ROSEMARY CALLAHAN, Respondent-Appellee. |
| District & No. | First District, Third Division<br>Docket No. 1-11-3751 |
| Filed | January 23, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The marital settlement agreement incorporated into the judgment dissolving the parties' marriage was vacated on the grounds that both petitioner and his counsel made several misrepresentations during the prove-up hearing and the agreement unconscionably favored petitioner. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-D-7985; the Hon. LaQuietta Hardy-Campbell, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Rosenfeld Hafron Shapiro & Farmer, of Chicago (Howard H. Rosenfeld, of counsel), for appellant. |

Schiller DuCanto & Fleck LLP, of Chicago (Sarane C. Siewerth and David H. Hopkins, of counsel), for appellee.

Panel     JUSTICE STERBA delivered the judgment of the court, with opinion.
Presiding Justice Neville and Justice Hyman* concurred in the judgment and opinion.

# OPINION

¶ 1     The marriage between petitioner-appellant Michael Callahan and respondent-appellee Rosemary Callahan was dissolved on September 10, 2008, in a judgment of dissolution that incorporated the parties' marital settlement agreement (MSA). Two years later, respondent filed a motion to vacate the judgment of dissolution under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2010)), alleging that the MSA was unconscionable and that: (1) petitioner fraudulently induced her to sign the MSA by misrepresenting its contents; and (2) petitioner's counsel made misrepresentations of fact and law during the prove-up hearing. Petitioner appeals from the order of the circuit court granting respondent's motion for summary judgment on count II of the petition to vacate. Petitioner argues that the court erred in granting summary judgment when there was no evidence of respondent's due diligence in bringing the motion and where he was not permitted to depose respondent. For the following reasons, we affirm.

¶ 2                             BACKGROUND

¶ 3     Petitioner and respondent were married on September 17, 1979. A daughter was born to their union in 1985. The daughter had reached the age of majority when the parties entered into a legal separation agreement in 2007. The separation agreement was followed by petitioner's motion for judgment of dissolution of marriage on August 19, 2008.

¶ 4     Respondent did not attend the initial prove-up hearing on the petition for dissolution in August, though she had entered an appearance *pro se*. At the prove-up hearing, petitioner testified to the existence of the MSA that had been signed and initialed by him and his wife. A copy of the MSA is not contained in the record, but petitioner testified to its contents. According to his testimony, the MSA provided that neither he nor respondent was entitled to any maintenance from the other. It further provided that petitioner would pay respondent's health insurance for four years. Petitioner took on the responsibility of all marital debt, which

*Justice Steele participated in the original Rule 23 order filed December 21, 2012, prior to his retirement from the Illinois Appellate Court.

-2-

amounted to approximately $100,000. Petitioner would also retain certain marital assets, including his pension from the Chicago fire department, where he had worked approximately 29 years, as well as the parties' house at 5309 South Nottingham. However, petitioner testified that respondent would be entitled to exclusive possession of the residence for as long as she is physically able to reside therein.

¶ 5     The court found the agreement unconscionable, stating, in pertinent part:

"THE COURT: I have a real problem with case, okay? His pension–if there was a present cash value–I'm not trying to play lawyer or actuary. But he's got three, four hundred thousand in his pension benefits, two hundred thousand in the house.

MR. GRANT [Petitioner's Attorney]: I think his pension might be about–well, I think his deferred comp might be like a hundred thousand.

THE COURT: How long have you worked for the fire department?

THE WITNESS [Petitioner]: Twenty-nine years.

THE COURT: And you're telling me he's go [*sic*] a pension of a hundred thousand? I did these things. I know what they are worth.

* * *

THE COURT: We an [*sic*] go on and on about this. I find that this agreement is unconscionable, okay? I am not going to enter it. *** You've got a woman who doesn't have a lawyer, with all due respect. *** The woman comes in and she's saying okay. Fine. But you tell me how she is going to live. If your client says that it was his intent to support her, put it in the agreement. Give her some maintenance. It's a–1979. It's almost a thirty-year marriage. And I am not going to enter this."

Further supporting the court's finding of unconscionability was the fact that respondent, who was 51 years old at the time of the hearing, had not worked since 1985, when the parties' only child was born.

¶ 6     Subsequently, a second prove-up hearing was held on September 10, 2008, before Judge Hardy-Campbell. At that hearing, at which respondent was also absent, petitioner testified that he had been awarded the Nottingham residence in the legal separation agreement, and as such, it was nonmarital property belonging to him. Petitioner also testified to the terms of an amended MSA signed and initialed both by him and his wife. In that MSA, petitioner agreed to pay monthly maintenance to respondent in the amount of $2,500 until August 12, 2022, at which time respondent could file a petition for renewal of maintenance, but which renewal would not exceed $2,500 per month. The MSA still provided that petitioner would retain the Nottingham residence and remain responsible for all encumbrances with regard to the residence, and each party would retain any retirement accounts in his or her own name. In the MSA, petitioner represented that he possessed a City of Chicago pension with the Chicago fire department, as well as a deferred compensation account, while respondent represented that she had no retirement accounts.

¶ 7     The court initially expressed concern about the failure to divide petitioner's retirement account, querying whether respondent had any retirement accounts of her own, to which petitioner's counsel, Burton F. Grant, responded that he was not sure. During the course of

the hearing, the court continued to reiterate its concerns over the retirement account, stating:

> "THE COURT: Again. I'm having a problem. I have a 29-year marriage. The only thing I'm looking at really that's making the red flag go off in my head, one, I don't know if this woman has worked all 29 years. I know you told me she worked at some point. She may have a retirement. But I'm talking about a 29-year marriage and her waiving completely any retirement account.

> MR. GRANT [Petitioner's Attorney]: My client is assuming 100,000 of family debts. The wife is being held harmless from that. His retirement account might be worth approximately the same as the debts. Therefore, there is no marital estate to divide. There is nothing."

Though the court continued to be troubled by the divvying up of the assets, it ultimately found the agreement was entered into freely and voluntarily and was not unconscionable.

¶ 8 Two years later, on September 8, 2010, respondent moved to vacate portions of the judgment of dissolution, which motion was amended in May 2011. In the amended motion, respondent alleged that the MSA was unconscionable and alleged the following two counts of fraud: one, that petitioner fraudulently induced her to sign the MSA by misrepresenting its contents, and two, that petitioner's counsel made misrepresentations of fact and law during the prove-up hearing. To support her claim of unconscionability, respondent averred that the net equity in the Nottingham residence, which was in fact marital property, was $175,000. She further averred that the projected value of petitioner's pension plan was $1,500,000. These figures were based on appraisals, mortgage documents, and statutory and actuarial calculations.

¶ 9 Respondent's claim of fraudulent inducement included allegations that petitioner represented to her that the terms in the MSA were for her benefit. In her affidavit attached to her petition to vacate, she maintained that she was unable to read the MSA herself, as the medications she was taking for fibromyalgia and bipolar disorder severely impaired her cognitive functioning, to the point where she had difficulty reading a newspaper, driving, and carrying on conversations.

¶ 10 Her affidavit went on to recount the circumstances under which she signed the MSA. Specifically, on September 5, 2008, while respondent was staying with her parents, she recalls that petitioner came to their home with the MSA, telling her they needed to process the divorce papers. The two went into the basement for privacy, whereupon petitioner represented to her that the MSA gave her half of the Nottingham property and allowed her to live there until it was sold. Further, he stated that the document required him to provide her health insurance for the rest of her life and to give her half his pension upon his retirement. Respondent accepted his words as true and initialed and signed the document upon his request, while he continued to hold onto it. She never read the document, had not seen it before, and was not provided with a copy. After the judgment of dissolution was entered, she repeatedly questioned petitioner as to the terms of the MSA, and petitioner continued to state that she would receive one-half of the home and his pension. It was not until after mid-April 2010, when a new doctor reduced the number of medications she needed to take, that she was lucid enough to consult with a lawyer and learn the actual terms

of the MSA.

¶ 11    Finally, respondent alleged that petitioner's attorney made misrepresentations of fact at the prove-up hearing which had the effect of perpetrating a fraud on the court. These misrepresentations included statements that the Nottingham residence was nonmarital property and that because petitioner's pension was only worth $100,000, the same amount as the parties' marital debts, there was no marital estate to divide.

¶ 12    While petitioner's response to the motion to vacate admitted the statements made by his counsel at the prove-up hearings, the response generally denied all of respondent's other allegations. His affidavit attached to his response specifically denied all allegations of coercion and duress, and further denied that respondent's health issues caused her to be cognitively impaired. The affidavit made no mention of the accuracy, or lack thereof, of the value of his pension or the parties' marital residence.

¶ 13    In August 2011, respondent moved for summary judgment on count II of her motion to vacate, arguing that there was no issue of material fact as to either the unconscionability of the MSA or petitioner's attorney's misrepresentations to the court. In response, petitioner sought leave to take the deposition of respondent. Respondent moved to quash the taking of a deposition on the basis that it would yield no information relevant to count II of her motion to vacate. The motion to quash was granted in October 2011, and petitioner was ordered to respond to the motion for summary judgment.

¶ 14    On November 16, 2011, after the motion for summary judgment was fully briefed and the court heard arguments from both parties, the court granted respondent's motion for summary judgment relative to count II of her motion to vacate, vacating all adjudicatory provisions in the judgment of dissolution, with the exception of the provision dissolving the parties' marriage. Specifically, the court found that as a matter of law, there was evidence of both fraud and unconscionability such that no finding of respondent's due diligence in bringing the motion was necessary in order to vacate the judgment. This timely appeal follows.

¶ 15                                      ANALYSIS

¶ 16    On appeal, petitioner argues that the court erred in granting summary judgment on respondent's petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure. 735 ILCS 5/2-1401 (West 2010). Summary judgment is proper when the pleadings, depositions, and affidavits demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2010); *State Farm Mutual Automobile Insurance Co. v. Coe*, 367 Ill. App. 3d 604, 607 (2006). In making this determination, the record materials must be viewed in the light most favorable to the nonmovant. *Federal Insurance Co. v. Lexington Insurance Co.*, 406 Ill. App. 3d 895, 897 (2011). We review *de novo* an order granting summary judgment. *Hall v. Henn*, 208 Ill. 2d 325, 328 (2003).

¶ 17    In order to succeed on a petition for relief under section 2-1401, a petitioner must set forth allegations supporting: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting the defense or claim to the circuit court in the original action; and (3)

due diligence in filing the section 2-1401 petition. *Paul v. Gerald Adelman & Associates, Ltd.*, 223 Ill. 2d 85, 94 (2006). Ordinarily, the petition is used to bring facts to the attention of the trial court which, if known at the time of judgment, would have precluded the entry of the judgment. *Id.* Relief is available under section 2-1401 to set aside a settlement agreement that is unconscionable or entered into as a result of duress, coercion, or fraud. *In re Marriage of Johnson*, 339 Ill. App. 3d 237, 241 (2003).

¶ 18   Initially, petitioner contends that respondent did not satisfy the requirement of due diligence, either in presenting her defense to the court originally or in filing her section 2-1401 petition. Petitioner acknowledges that where justice and fairness require, a judgment may be vacated even where the requirement of due diligence has not been met (*Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 225-26 (1986); see also *In re Marriage of Hoppe*, 220 Ill. App. 3d 271, 282 (1991)), but draws a distinction between making a specific finding as to satisfaction of the due diligence requirement versus dispensing with the requirement altogether. Here, the court opted for the latter course and declined to address due diligence issues in light of its finding that considerations of fairness and justice would not allow the judgment of dissolution to stand in any event.

¶ 19   We agree that, generally, there should be a finding as to due diligence before a decision on a section 2-1401 petition is rendered, regardless of the basis on which the decision is made. However, because we conclude that there was evidence of unconscionability and fraud in the instant case that would require vacating the judgment of dissolution regardless of whether respondent acted diligently (see *Johnson*, 339 Ill. App. 3d at 243; *In re Marriage of McGlothlin*, 312 Ill. App. 3d 1145, 1148-49 (2000)), we need not remand for an inquiry into respondent's diligence.

¶ 20   Turning first to the issue of unconscionability, it is well settled that a marital settlement agreement is unconscionable if there is " 'an absence of a meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.' " (Internal quotation marks omitted.) *In re Marriage of Steadman*, 283 Ill. App. 3d 703, 709 (1996) (quoting *In re Marriage of Carlson*, 101 Ill. App. 3d 924, 930 (1981)). This general definition encompasses both procedural unconscionability–involving impropriety during the process of forming a contract that deprives a party of meaningful choice–and substantive unconscionability–a situation in which a clause or term in the contract is one-sided or harsh. *In re Marriage of Gibson-Terry*, 325 Ill. App. 3d 317, 326 (2001) (quoting *Bishop v. We Care Hair Development Corp.*, 316 Ill. App. 3d 1182, 1196 (2000)). In certain circumstances, however, an agreement may be so one-sided or oppressive that it can be found unconscionable even without taking into account the conditions under which the agreement was made, or whether the complaining party had a meaningful choice. See *Johnson*, 339 Ill. App. 3d at 242. This is clearly the case here.

¶ 21   Pursuant to section 503(d) of the Illinois Marriage and Dissolution of Marriage Act, marital property, which includes pensions, must be divided in "just proportions." 750 ILCS 5/503(d) (West 2010). While this does not mean mathematical equality, the distribution must be equitable. *In re Marriage of Roepenack*, 2012 IL App (3d) 110198, ¶ 32.

¶ 22   In the case *sub judice*, after a marriage of 29 years, respondent was awarded $2,500 per

month in maintenance, an amount only modifiable upon the occurrence of certain statutory events (750 ILCS 5/510 (West 2010)), to continue for 14 years until her sixty-fifth birthday, at which point she could petition for a renewal amount not to exceed $2,500. She was also entitled to payment of her health insurance premiums by petitioner, including co-pays, co-insurance, and deductibles for a period of four years beginning on September 8, 2008. On the other hand, petitioner was awarded ownership of the parties' home at 5309 South Nottingham and retained his entire pension. In her motion to vacate, respondent alleged the net equity in these assets was $175,000 and $1,500,000, respectively.[1] The accuracy of these valuations was not rebutted by petitioner in a counteraffidavit, and, therefore, we accept them as true. See *O'Malley v. Powell*, 202 Ill. App. 3d 529, 533 (1990) (uncontradicted facts in section 2-1401 petition and supporting affidavit must be taken as true).

¶ 23    These terms are, undoubtedly, "improvident, totally one-sided [and] oppressive." *In re Marriage of Gorman*, 284 Ill. App. 3d 171, 182 (1996). This is not a case where the agreement merely favors one party over another. See *In re Marriage of Bielawski*, 328 Ill. App. 3d 243, 253 (2002). Instead, respondent, who had been a homemaker after the parties' daughter was born in 1985, was left with an essentially nonmodifiable maintenance to cover her living expenses, while petitioner retained the entire marital estate. Even when we consider that petitioner assumed liability for all marital debts, which amounted to approximately $100,000, this does not come close to offsetting the value of what he received in the MSA. We conclude that these terms are unconscionable as a matter of law.

¶ 24    In addition to the unconscionability of the MSA, respondent also presented undisputed evidence that it was procured by fraud. A showing of fraud requires: (1) a false statement of material fact known or believed to be false by the party making it; (2) intent to induce another party to act; (3) action by another party in reliance on the truth of the statement; and (4) damage to the party relying on the statement. *In re Marriage of Sassano*, 337 Ill. App. 3d 186, 194 (2003). The misrepresentation or concealment of facts from the court has been held sufficient to support vacating a judgment on grounds of equity. See *McGlothlin*, 312 Ill. App. 3d at 1148-49 (where petitioner and her attorney did not make court aware of existence of MSA governing distribution of assets upon divorce, court erred in denying respondent's section 2-1401 motion to vacate judgment).

¶ 25    Here, the record reveals that both petitioner and his attorney made numerous misrepresentations of material facts at the prove-up hearing. First, petitioner's attorney elicited testimony from petitioner that the residence at 5309 South Nottingham was awarded to petitioner as part of the judgment of legal separation and as such, was nonmarital property. Because petitioner's attorney had in fact prepared the judgment of legal separation, he obviously knew this representation was false. Next, in response to the court's queries about petitioner's retirement account, petitioner's attorney responded that the retirement account "might be worth approximately the same as the debts [$100,000]. Therefore, there is no

---

[1]The pension values were calculated based on petitioner's years of service–28–as of the date of the judgment of dissolution, but given that petitioner was still working for the fire department at that time, his actual pension would be based on a higher number of years of service.

marital estate to divide. There is nothing." As the unrebutted evidence reveals that the retirement account was worth in excess of $1 million as of 2008, this was another gross misstatment of fact on the part of petitioner's attorney. Moreover, both petitioner and his attorney were put on notice as to the erroneous nature of the $100,000 valuation, when, at the first prove-up hearing, the trial judge expressed deep skepticism that the pension was worth only $100,000 given petitioner's years of service and the judge's personal knowledge about pension values.

¶ 26 In light of this clear evidence establishing fraud and unconscionability as a matter of law, we conclude that regardless of whether respondent acted with diligence, the court properly granted her motion for summary judgment on her petition to vacate the settlement agreement incorporated into the judgment of dissolution of marriage.

¶ 27 Next, we consider petitioner's related argument that the court erred in prohibiting him from taking the deposition of respondent before ruling on respondent's motion for summary judgment. Because the trial court has wide latitude to control the scope of discovery, discovery orders are subject to review for an abuse of discretion. *Old Orchard Urban Ltd. Partnership v. Harry Rosen, Inc.*, 389 Ill. App. 3d 58, 72 (2009). An abuse of discretion occurs when the court's ruling is arbitrary, fanciful or unreasonable, or where no reasonable person would adopt the court's view. *TruServ Corp. v. Ernst & Young LLP*, 376 Ill. App. 3d 218, 227 (2007).

¶ 28 As petitioner points out, both Illinois Supreme Court Rule 191(b) and section 2-1005 of the Code of Civil Procedure generally permit the taking of depositions as a form of discovery to oppose a motion for summary judgment. Ill. S. Ct. R. 191(b) (eff. July 1, 2002); 735 ILCS 5/2-1005 (West 2010). However, the scope of discovery is limited to matters that are relevant to the subject matter of the pending action. *Owen v. Mann*, 105 Ill. 2d 525, 530 (1985) (quoting Ill. S. Ct. R. 201(b) (eff. July 1, 2002)). As such, it has long been held that there is no abuse of discretion where a trial court denies discovery of a subject not relevant to the issues of the case. *M. Loeb Corp. v. Brychek*, 98 Ill. App. 3d 1122, 1125-26 (1981).

¶ 29 In the instant case, petitioner sought to take respondent's deposition in order to test the veracity of her claims of legal incompetency and her alleged lack of understanding of the terms of the MSA at the time she signed it. However, although respondent's petition to vacate did contain allegations of her incompetency and inability to understand the MSA, this was not the basis on which she moved for summary judgment. Rather, her motion for summary judgment was premised on count II of her petition to vacate, which alleged fraudulent acts by petitioner's attorney and the unconscionability of the MSA. Petitioner has failed to explain how eliciting information from respondent as to her mental competency and the circumstances under which she signed the MSA would shed light on these latter allegations.

¶ 30 To the extent petitioner speculates that the court's finding of unconscionability could only have been made after a determination that respondent "never knowingly and willingly agreed to the terms of the document," this contention is belied by the record. Specifically, the court's order explicitly states that its finding of unconscionability was instead made "in light of the indisputable approximate values as of September 10, 2008 of the retirement plan

interest of Michael Callahan and of the parties' former marital home." Because any testimony respondent could have provided at her deposition would not have been relevant for purposes of deciding this issue, we cannot say it was an abuse of discretion for the circuit court to prohibit petitioner from taking the deposition.

¶ 31                                    CONCLUSION
¶ 32          For the reasons stated, we affirm.

¶ 33          Affirmed.