NOTICE

Decision filed 02/18/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 200043-U

NO. 5-20-0043

IN THE

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| GREGORY D. WEEKS, | ) | Saline County. |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| and | ) | No. 12-D-2 |
| | ) | |
| KIMBERLY A. WEEKS, n/k/a Kimberly | ) | |
| Cabaness, | ) | |
| | ) | |
| Respondent | ) | |
| | ) | Honorable |
| (Kimberly A. Cabaness, Petitioner-Appellee; | ) | William J. Thurston, |
| Gregory D. Weeks, Respondent-Appellant). | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Justices Welch and Cates concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We reverse the circuit court's order that granted a summary judgment to Wife on her petition, pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2018)), to vacate the portion of dissolution judgment that incorporated the marital settlement agreement (MSA), because an evidentiary hearing is required for the circuit court to consider all of the facts and circumstances surrounding the entry of the MSA and the entry of the judgment prior to making a determination that equitable considerations merit relaxation of due diligence requirements.

1

¶ 2    The respondent, Gregory D. Weeks, appeals the January 31, 2020, order of the circuit court of Saline County, which granted the second motion for summary judgment filed by the petitioner, Kimberly A. Cabaness, on her petition to vacate, pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2018)), the circuit court's prior judgment approving the parties' marital settlement agreement (MSA). For the following reasons, we reverse and remand for further proceedings.

¶ 3                              BACKGROUND

¶ 4                        I. Dissolution Proceedings

¶ 5    On January 6, 2012, Gregory filed a petition for dissolution of his marriage to Kimberly, requesting, *inter alia*, that the circuit court incorporate the parties' written MSA to the judgment of dissolution. On that day, the parties also filed the following documents: (1) "Entry of General Appearance, Confession, and Consent to Immediate Proceedings In Case Without Running Of 30-Day Period" signed by Kimberly; (2) "Agreement of Unrepresented Spouse" signed by Kimberly as consent to proceed unrepresented and acknowledgment that attorney Samuel G. Beggs represented Gregory only; (3) "Stipulation-Affidavit-Waiver" signed by Gregory and Kimberly waiving the requirement that they live separate and apart for two years as set forth in section 401 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/401 (West 2010)); and (4) "Motion to Seal/Impound" the parties' MSA.

¶ 6    The parties, along with Attorney Beggs, appeared before the Honorable Walden E. Morris the same day the petition for dissolution of marriage was filed. Attorney Beggs presented the MSA, dated January 5, 2012, to the circuit court. Gregory testified that he

and Kimberly had agreed to bring the matter of their divorce before the circuit court of Saline County, rather than the circuit court of Franklin County, which is the county where they reside, and where their marriage was registered. He testified that two children were born to the marriage, and both are now emancipated adults. The circuit court set forth the terms of the MSA in an inquiry to Gregory as follows:

> "THE COURT: [Gregory], in this document you are required as to the property settlement to pay to Kimberly *** the sum of $1,500,000; is that correct?
>
> GREGORY: Yes.
>
> THE COURT: And in addition[,] you are paying to her within 30 days the sum of $300,000, correct?
>
> GREGORY: Yes.
>
> THE COURT: There is personal property that she is to receive, including, but not limited to a 2011 GMC Denali, a [p]ontoon boat with trailer, jet skis with a trailer, her personal property, her 401k and IRAs. And in exchange for that, you are receiving certain property which generally involves the business interests of Weeks?
>
> GREGORY: Yes.
>
> THE COURT: And certain real estate; is that correct?
>
> GREGORY: Yes."

¶ 7   After confirming that Gregory believed the settlement was fair and reasonable, the circuit court inquired of Kimberly as follows:

> "THE COURT: The [c]ourt has reviewed the file thus far in this matter. You understand that if you choose you have the right to be represented by an attorney?

3

KIMBERLY: Yes.

THE COURT: And you have filed an entry of appearance conferring jurisdiction upon the [c]ourt. As to this matter, you have acknowledged that Mr. Beggs does not represent you—

KIMBERLY: Right.

THE COURT: —that he represents [Gregory]—

KIMBERLY: Yes.

THE COURT: —in this matter? And looking at this [MSA], and considering the testimony of [Gregory], I note that you have signed the [MSA]. Have you read this and have you—do you understand the terms and conditions of the [MSA]?

KIMBERLY: Yes, I have.

THE COURT: Now, you have been employed; is that correct?

KIMBERLY: What?

THE COURT: You have been employed?

KIMBERLY: Yes.

THE COURT: Are you employed at this time?

KIMBERLY: I guess not. I work for the dealership.

THE COURT: Well, is that employment going to terminate in the very near future?

KIMBERLY: It's terminated as of today I guess, yes.

THE COURT: Okay. Do you understand that if the [c]ourt grants this [d]issolution of [m]arriage and accepts this [MSA] as the agreement of you and

4

[Gregory], that that's going to be the extent of the obligation of [Gregory] to you and you to [Gregory] as it would relate to this marriage?

KIMBERLY: Yes.

THE COURT: You're 45 years of age?

KIMBERLY: Yes.

THE COURT: Are you willing to seek further employment?

KIMBERLY: Yes.

THE COURT: Are you in your mind employable?

KIMBERLY: Yes.

THE COURT: Now, you have read this [MSA]?

KIMBERLY: Yes.

THE COURT: Do you, based upon your knowledge of your marital assets, your non-marital assets, believe that this is fair and a reasonable settlement agreement?

KIMBERLY: Yes, I do.

THE COURT: Are you asking that the [c]ourt adopt this and concur that this should be the judgment of the [c]ourt as it would relate to the division of your property?

KIMBERLY: Yes, I do.

THE COURT: Now, [Kimberly], has anyone—this is emotional, I understand that—but has anyone threatened you, coerced you or intimidated you in any way—

KIMBERLY: No.

5

THE COURT: —to come to this conclusion and to ask the [c]ourt to concur in the terms of this [MSA]?

KIMBERLY: No."

¶ 8     Following this inquiry, the circuit court stated that it had considered the testimony of the parties, the pleadings of record, and the terms of the MSA. The circuit court found that there were grounds sufficient to dissolve the parties' marriage and that the MSA was not unconscionable. The court granted the parties a dissolution of their marriage, and incorporated the MSA into the judgment, which was entered that date. The MSA was filed under seal and contained the following relevant terms.

¶ 9                                II. Terms of MSA

¶ 10    The MSA provides that Kimberly acknowledged she had the right to counsel, had full knowledge of the practical effect of her decision to waive a consultation with counsel, and that she was fully informed of her rights and obligations under Illinois law and pursuant to the provisions of the MSA. The MSA states that both parties represented and warranted that he/she was fully informed of the wealth, property, assets, debts, estate, and income of the other, had carefully reviewed the terms and provisions of the MSA, and had a full and complete understanding of the legal consequences of those terms. The MSA further states that the parties represented and warranted that they entered the MSA freely and voluntarily, without imposition of force, duress, coercion, or undue influence from any source. Finally, the MSA states that the parties represented and warranted that the terms and provisions of the MSA are fair and equitable to each of the parties considering their respective and collective circumstances.

¶ 11    In the MSA, both parties agreed to waive all rights to maintenance and specified that this provision was not subject to modification by the court. Gregory was allotted residential property located in Benton, together with several other parcels of real estate, which were listed on Exhibits A and B to the MSA. Exhibit A lists 12 parcels of real estate by legal description, and Exhibit B lists 9 parcels by legal description. Kimberly was allotted one parcel of residential real estate in Sesser, which was described in Exhibit C by legal description. No other information about the real estate was listed on the MSA.

¶ 12    With regard to personal property, the MSA allotted the following to Kimberly: (1) all of her personal property, all Thomas Kinkade items, and such furniture and furnishings as she may elect from the former marital residence; (2) all bank accounts and deposits in her name alone; (3) a 2011 GMC Denali; (4) pontoon boat and trailer; (5) two jet skis with trailer; (6) all other personal property in her possession and control; and (7) 100% interest in the 401(k) in her name, and all IRAs in her name. In addition, pursuant to the MSA, Gregory agreed to pay to Kimberly, "in full, final and complete settlement as to property or as to any other alleged right, title or claim [Kimberly] would *** claim to have": (1) the sum of $1.5 million within 7 days of the entry of the judgment; (2) $300,000 "for the purchase of a house and furnishings" to be paid within 30 days of the judgment; and (3) the premiums to keep her covered under the health insurance the parties previously had for a year.

¶ 13    The MSA provides that Gregory would be allotted, in addition to the real estate described above, "all other properties or assets not expressly awarded to" Kimberly, including but not limited to the following: (1) all cash in accounts with banks and

investment firms, together with all other investments unless they were in Kimberly's name alone; (2) all marketable securities other than those in Kimberly's name alone, if any; (3) any 401(k) or IRA accounts in Gregory's name; (4) all shares of stock and interest, including all assets, in Greg Weeks, Inc., Greg Weeks Benton, Inc., Greg Weeks West Frankfort, Inc., and Southern Illinois Mine Equipment LLC, and all other entities in which Gregory has an interest; and (5) all prepaid income tax deposits made by Gregory individually or on behalf of the corporate entities set forth above.

¶ 14   Pursuant to the MSA, Gregory agreed to assume the following debt incurred through January 5, 2012: (1) the balance on a GM Mastercard; (2) the balance on a GM Extended Family Mastercard; (3) the balance on a Chase Business Mastercard; and (4) any additional tax liability resulting from future audits for any year in which the parties filed a joint income tax return. The MSA did not specify the value of any of the marital assets and liabilities other than specifying the amount of the cash payments Gregory agreed to pay Kimberly.

¶ 15                          III. Kimberly's 2-1401 Petition

¶ 16   On January 3, 2014, Kimberly filed, pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2012)), a petition to vacate the January 6, 2012, judgment and set aside the MSA. The petition alleges the details of the events that took place in the days leading up to the execution of the MSA and the January 6, 2012, hearing. The petition alleges that, at the time that she testified at the hearing, Kimberly did not believe she had any choice but to agree with Gregory's offer due to him pressuring her to take the deal and threatening that she would receive nothing if she did not accept his offer. Further, the

8

petition alleges that, at the time she entered the MSA, she was not aware of nor had access to the following information: (1) the values or holdings of the parties in their own names including investments and bank accounts; (2) the parties' tax returns or those from the businesses; (3) the value or assets or income of the businesses owned by the parties or acquired during the marriage; and (4) the real estate holdings of the parties. According to the petition, upon information and belief, the marital estate was worth more than $16 million as of January 6, 2012.

¶ 17    The petition outlines a pattern of physical and emotional abuse that Kimberly alleges she suffered at the hands of Gregory throughout the marriage. The petition alleges that this long pattern of abuse caused Kimberly to have a diminished ability to communicate with Gregory, or to resist his demands and threats. Finally, the petition alleges that Kimberly had just begun to recover sufficiently to understand "the impropriety of what happened with the divorce" and to begin to obtain documentation of the extent of the marital assets. Count I of the petition alleges that Kimberly would not have agreed to the MSA absent coercion and duress on the part of Gregory. Count II of the petition alleges that the MSA is unconscionable. Count III of the petition alleges that the dissolution judgment was entered on fraudulent grounds. Kimberly attached her affidavit, outlining in detail the facts underlying the allegations in the petition.

¶ 18                    IV. Kimberly's First Motion for Summary Judgment

¶ 19    On April 10, 2017, Kimberly filed a motion for summary judgment on the issue of the substantive unconscionability of the MSA. In her first motion for summary judgment, Kimberly argued that the terms of the MSA are so one-sided in Gregory's favor that it is

9

substantively unconscionable as a matter of law. For this reason, Kimberly argued the circuit court should grant her a summary judgment on the issue of substantive unconscionability and "set aside" that portion of the judgment of dissolution that incorporated the MSA.

¶ 20     In addition to pleadings and transcripts of proceedings described above, Kimberly attached to her motion the following documents: (1) the parties' 2010 joint federal tax return, reflecting an adjusted gross income of $1,139,581; (2) the parties' 2011 joint federal tax return, reflecting an adjusted gross income of $1,227,439; (3) Gregory's 2012 federal income tax return, reflecting an adjusted gross income of $999,130; (4) Kimberly's affidavit, laying a foundation for Kimberly's 2011 and 2012 W-2's, which reflected a gross income of $20,400 and $21,800 respectively in wages from Greg Weeks, Inc., and a settlement statement, attesting to having sold the one parcel of real estate she had received pursuant to the MSA for $49,151.27; (5) a document produced by Gregory in discovery titled "Gregory & Kimberly Weeks Statement of Financial Condition-Income Tax Basis [a]s of December 31, 2010" (2010 Financial Statement), signed by both Gregory and Kimberly, stating that the "net worth" of the parties as of that date was $11,823.581.34; and (6) a document produced by Gregory in discovery titled "Gregory Weeks Statement of Financial Condition-Income Tax Basis [a]s of October 31, 2012" (2012 Financial Statement), reflecting that Gregory's "net worth" as of that date was $13,145,151.29. The assets and liabilities reflected in these two financial statements are summarized in the following chart:

| Asset/Liability Type | Gregory and Kimberly December 31, 2010 | Gregory October 31, 2012 |
| --- | --- | --- |
| Cash | $2,500,000 | $2,000,000 |
| Marketable Securities | $263,414.34 | $265,381.75 |
| Stock Ownership | $5,938,044<br><br>Includes $4,800,000 for Greg Weeks, Inc.<br><br>$1,020,000 for Greg Weeks Benton, Inc. | $6,291,585<br><br>Includes $4,800,000 for Greg Weeks, Inc.<br><br>$1,020,000 for Greg Weeks Benton, Inc. |
| Real Estate | $3,336,754 | $4,588,184 |
| Tax Liabilities | $214,631 | $43,505 |
| Total "Net Worth" | $11,823,581.00 | $13,101.646.29 |

¶ 21    Gregory filed a response to the first motion for summary judgment, in which he argued, *inter alia*, that summary judgment was improper because Kimberly did not satisfy

11

the prerequisites for filing a petition pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2016)), and that the valuation of the marital estate, according to his retained experts, was substantially less than is reflected in the financial statements Kimberly tendered in support of her motion, which Gregory argued were inaccurate as to the actual value of the assets. Gregory submitted a detailed appraisal of the fair market value of a 100% common stock interest of Greg Weeks, Inc. as of January 6, 2012, which was prepared by Klaris, Thomson & Schroeder, Inc. According to this valuation, the fair market value of 100% common interest in stock of Greg Weeks, Inc. as of January 6, 2012, was $3 million.

¶ 22    Gregory also submitted his own affidavit in response to Kimberly's first motion for summary judgment. According to Gregory's affidavit, he liquidated his cash accounts to pay Kimberly the sum of $1.8 million in the 30-day period set out in the MSA. Gregory's affidavit also outlines the following benefits Kimberly received pursuant to the MSA: (1) health insurance for one year; (2) an unencumbered home in West Frankfort[1]; (3) property in Sesser consisting of two unencumbered homes and one half block of land; (4) GMC Denali of approximately $50,000 in value; (5) two jet skis, one boat, and their respective trailers; (6) Kimberly's personal jewelry, worth in excess of $40,000; (7) release from business debt totaling $24,087,183; (8) release from all personal debt up to dissolution; (9) release from all tax liability up to dissolution; and (10) payment of all credit card debt up to dissolution.

---

[1]This court does not find a provision in the MSA that allotted a residence in West Frankfort to Kimberly.

12

¶ 23    In addition to the foregoing, Gregory's affidavit avers that Kimberly represented to him at the time of the dissolution hearing that she was to be employed by the State of Illinois "in a position which included a significant salary and benefits package." According to Gregory's affidavit, Kimberly's brother, Rodney Cabaness, was the executive manager of "the dealership" for several years until he left to open his own Harley Davidson franchise, and used his industry expertise and personal knowledge to help Kimberly negotiate the MSA. In addition, Gregory averred that Kimberly was provided information by "the CPA" six months prior to negotiating the MSA and therefore knew the value of the marital estate. Finally, Gregory attested in his affidavit that Kimberly "is an intelligent[,] competent businesswoman with litigation experience, [and] had full access to everything she would need to perform an investigation, but chose not to do so."

¶ 24    Gregory also attached the affidavit of Harold W. Meyer, a certified public accountant, to his response to Kimberly's first motion for summary judgment. According to this affidavit, Mr. Meyer provided accountancy services to the parties during their marriage, as well as to "Weeks-related businesses." The affidavit states that Mr. Meyer prepared the 2010 Financial Statement for income tax purposes, and the values of the assets set forth therein were not based on his appraisal of the value of those assets, as he is not qualified to provide such an opinion. The affidavit concludes that he would refer the matter of the value of the assets to a certified business evaluator or other specialized appraiser for the purpose of rendering a professional opinion on the fair market value of the assets.

¶ 25    The affidavit of Nancy J. Matheny, a senior valuation consultant of the business valuation firm of Klaris, Thomson & Schroeder, was also attached to Gregory's response.

13

According to Ms. Matheny, she valued the common stocks of the marital estate as of the date of the divorce as follows: (1) Greg Weeks, Inc.—$3 million; (2) Greg Weeks Benton, Inc.—$890,000; (3) Greg Weeks West Frankfort, Inc.—$280,000; and (4) Gregory's "personal good will," which Ms. Matheny classifies as "non-marital"—$940,000. The affidavit of Gary L. Schroeder, the managing director of Klaris, Thomson & Schroeder, contains the same valuation as that of Ms. Matheny.

¶ 26 According to the affidavit of Christopher Scroggins, a certified public accountant, the 2010 Financial Statement, which was tendered by Kimberly in support of her motion for summary judgment, was based upon the income tax theory of accounting, which is not a generally accepted accounting principle. According to Mr. Scroggins, the values of the corporate stock listed on the 2010 Financial Statement also contain incorrect values even if the income tax basis of accounting is used. Mr. Scroggins' affidavit explains that, using the income tax theory of accounting, the total of all three dealerships as of 2011 would be $2,278,234. Mr. Scroggins' affidavit also states that the value of the real estate in the 2010 Financial Statement is also incorrect, but he does not offer an alternative value.

¶ 27 On June 1, 2018, the circuit court entered an order denying Kimberly's first motion for summary judgment. In its order, the circuit court found that genuine issues of material facts existed regarding the merits of Kimberly's section 2-1401 petition, including but not limited to: (1) whether issues of fraud, deception, or nondisclosure led to an absence of meaningful choice on the part of one of the parties together with contract terms which were unreasonably favorable to the other party; (2) whether the agreement was so one-sided or oppressive that it could be found unconscionable even without taking into account the

14

conditions under which the agreement was made, or whether the complaining party had a meaningful choice; (3) the circumstances and conditions under which the January 5, 2012, MSA was made; (4) the economic circumstances of the parties that resulted from the agreement; and (5) the parties' interchangeable use of the terms "net worth," "marital assets," "marital estate," and "nonmarital property" in the pleadings.

¶ 28                    V. Kimberly's Second Motion for Summary Judgment

¶ 29    On January 15, 2019, Kimberly filed a second motion for summary judgment "on the issue of the unconscionability of the parties' MSA." A review of Kimberly's motion reveals that, at the outset, Kimberly characterized the motion as one for a summary determination of the major issue of substantive unconscionability pursuant to section 2-1005(d) of the Code. 735 ILCS 5/2-1005(d) (West 2018). However, toward the end of the motion, Kimberly argued that the size of the marital estate and the percentage to be awarded to her pursuant to the MSA were "concealed from the [c]ourt by [Gregory] and [Attorney Beggs] and there is nothing in the record to suggest that Kimberly had knowledge of any of them." On this basis, Kimberly urged the circuit court to enter a summary judgment granting her section 2-1401 petition and thus setting aside the MSA.

¶ 30    The main additional document attached to Kimberly's second motion for summary judgment is the discovery deposition of Gregory, which was taken on August 27, 2018. Gregory testified that, at the time of his marriage to Kimberly in 1985, he worked in the parts and sales department of Weeks Chevrolet, which was then owned by his father. At the time, he had no investments and owned one house that was encumbered by a mortgage. His only other asset was a bank account containing approximately $5000 to $6000.

15

Kimberly was 20 years old and worked at the drive-through at Hardee's. In 1986, Kimberly became employed as an office secretary at Weeks Chevrolet. She did not own assets or real estate.

¶ 31    Gregory testified that, at the time of the divorce, he owned all stock in Greg Weeks, Inc., Greg Weeks of Benton, Inc., and Greg Weeks of West Frankfort, Inc., as well as Southern Illinois Mine Equipment. He purchased Greg Weeks, Inc. from his father in 1990 for $1 million. He purchased a small dealership in Benton in 1999 for $150,000, which is now run as Greg Weeks of Benton, Inc. He purchased the dealership that is run by Greg Weeks of West Frankfort, Inc., in 2005 for $250,000. Gregory owns 100% of the stock in all three of these corporations.

¶ 32    During the deposition, Kimberly's counsel pressed Gregory on the accuracy of the 2010 Financial Statement, which Gregory testified was prepared by his accountant to support a floor plan credit line agreement with General Motors. At one point, Gregory testified that the values of the dealerships as set forth in the statement may have been overstated by as much as $2 million or $3 million, although he represented them as correct when he submitted them to General Motors. Similarly, he did not agree with all the values listed on the 2012 Financial Statement but did certify them as correct when he submitted them to General Motors.

¶ 33    Gregory testified that Kimberly worked as an office manager in one of the dealerships during the marriage, and her responsibilities included auditing records, signing checks, and working in accounts receivables. There were no bank accounts that were in her name alone at the time of the divorce. She did not receive any income-producing assets.

During the deposition, Gregory testified regarding his version of the events that took place leading to the MSA and the dissolution proceeding of January 6, 2012.

¶ 34    On November 21, 2019, Gregory filed a response to Kimberly's second motion for a summary judgment. The circuit court heard oral argument on Kimberly's second motion for a summary judgment on November 26, 2019. At that hearing, the circuit court allowed each party to supplement the record with any further argument or evidentiary materials. On December 18, 2019, Kimberly supplemented the record with the following materials: (1) deposition excerpts of Attorney Beggs; (2) deposition excerpts of Kimberly; (3) deposition excerpts of accountant H.W. Meyer; and (4) deposition of Kimberly's retained expert witness, John Henry Ernst.

¶ 35    In his deposition excerpt, Attorney Beggs testified that he had no knowledge of the extent of the marital assets at the time he drafted the settlement documents and represented Gregory at the hearing on January 6, 2012. He testified that he has no knowledge of what Kimberly knew regarding the value of the marital estate at that time. He was not a party to the conversations that led to the parties' agreement as to the distribution of the assets, but he believed that Kimberly's brother, Rodney, was heavily involved with the negotiations between the parties in arriving at the terms of the MSA.

¶ 36    In her deposition excerpt, Kimberly testified that she was a silent partner in Black Diamond Helicopter Corporation, a business venture, with Rodney. She also testified about her work for the Weeks dealerships during the marriage, as well as that of her brother Rodney. In his deposition excerpt, H.W. Meyer testified he compiled the information on the 2010 Financial Statement to give documentation to a finance company for General

17

Motors of the parties' financial status. He testified that the values on the 2010 Financial Statement were provided to him by Gregory, Kimberly, or both. He is not an appraiser.

¶ 37 In his deposition, John Henry Ernst testified that he is a certified public accountant, affiliated with the firm of Kerber, Eck & Braekel, and has been accredited in business valuation since 2004. He has been involved with valuing several automobile dealerships in the past. He was retained by Kimberly's counsel to critique the business valuation opinions of Gregory's retained expert reports, with a focus on the valuation of Gregory's personal goodwill. Mr. Ernst completed a report dated October 15, 2018, valuing Gregory's personal goodwill at $260,000. In addition, Mr. Ernst testified that there is no reason to define personal goodwill in a business valuation that is not part of the service industry.

¶ 38 On January 27, 2020, Gregory supplemented the record with the affidavit of Karen Williams, who averred as follows. She has been a friend of Kimberly and Gregory for several years. In the first week of January 2012, Kimberly stayed at her home. During that week, she observed Kimberly spending time and/or communicating with her childhood sweetheart, and perceived Kimberly's plans to continue her relationship with him and to get a job with benefits with the State of Illinois after she could get her divorce completed. According to Ms. Williams' affidavit, she made comments to Kimberly and Gregory to slow down, and Kimberly was just as determined as Gregory to complete the divorce. Kimberly made comments about her being able to negotiate with Gregory and have her brother Rodney help her. Ms. Williams' affidavit avers that, during the time that she knew Gregory and Kimberly before the divorce, Kimberly made clear in conversations that "she

18

had a central role in the family dealerships" and was involved in all the family's business interests and legal affairs.

¶ 39                     VI. The Circuit Court's Order

¶ 40    On January 31, 2020, the circuit court entered an order granting Kimberly's second motion for a summary judgment. The circuit court found that it had discretion to "relax" the due diligence requirement of section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2018)) and held that principles of equity require relaxing those requirements in this case. The circuit court noted that at the time of the dissolution proceeding, the divorce court "was not made aware of the size of the marital estate, the lack of income earning assets or interest earning accounts transferred to [Kimberly], or the percentage of the marital estate to be awarded to [her]." After noting that whether to award relief under section 2-1401 of the Code lies within the sound discretion of the circuit court depending on the "facts and equities presented," the circuit court stated that, "[i]n this case, the court, in an exercise of its discretion, finds that principles of equity require relaxing the diligence requirement."

¶ 41    Thereafter, the circuit court found as follows regarding Kimberly's claim of substantive unconscionability:

      "Viewing the evidence in a light most favorable to [Gregory], using the [2010 Financial Statement], adjusting said statement to reflect [Gregory's] newly revised dealership values, giving no consideration to increased net worth in the form of cash held in various bank accounts submitted by [Gregory] during 2011, and giving no consideration to income earned by the parties during 2011, the court finds that[,] for purposes of summary judgment, the value of the marital estate on January 6, 2012,

19

was, at the very minimum, $11,326,317.00. Of this amount [Kimberly] received $1,984,024.90, or 17.516% of the value of the marital estate[.]

* * *

*** It is significant that [Kimberly] received no income producing assets, no provisions for maintenance, and was leaving her job with the dealership. And, based on the parties['] tax returns, [Kimberly] received total assets amounting to less than 2 years of the income that the parties produced during the later years of the marriage. In short, the [MSA] is so one-sided and oppressive that it is unconscionable even without taking into account the conditions under which the agreement was made, or whether [Kimberly] had a meaningful choice, the parties' disparity in income, and unequal earning potential. ***

*** This is a [MSA] in the dissolution of a twenty-six[-]year marriage in which virtually all assets were part of the marital estate. An award to [Kimberly] of 17.516% of the marital estate is substantively unconscionable as a matter of law. As such, [Kimberly] is entitled to judgment as a matter of law."

¶ 42    On February 6, 2020, Gregory filed a timely notice of appeal, pursuant to Illinois Supreme Court Rule 304(b)(3) (eff. Mar. 8, 2016).

¶ 43                                    ANALYSIS

¶ 44    We begin our analysis by reviewing the relevant standard of review for an order of the circuit court granting a motion for summary judgment pursuant to section 2-1005(a) of the Code (735 ILCS 5/2-1005(a) (West 2018)):

20

"Summary judgment is proper when the pleadings, depositions, and affidavits demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. [Citations.] In making this determination, the record materials must be viewed in the light most favorable to the nonmovant. [Citation.] We review *de novo* an order granting summary judgment. [Citation.]" *In re Marriage of Callahan*, 2013 IL App (1st) 113751, ¶ 16.

¶ 45 Here, the circuit court granted summary judgment on Kimberly's petition, brought pursuant to section 2-1401 Code (735 ILCS 5/2-1401 (West 2012)), to vacate the portion of the dissolution judgment that incorporated the MSA. The standards required to invoke relief under section 2-1401 are as follows:

"Section 2-1401 of the Code *** provides a comprehensive statutory procedure by which final orders, judgments, and decrees may be vacated after 30 days from the entry thereof. [Citation.] The purpose of a petition under section 2-1401 is to bring before the court matters of fact which were unknown at the time the judgment was entered, and if known, would have affected or altered the judgment that was entered. [Citations.]

To be entitled to relief under section 2-1401, the party seeking relief must show by a preponderance of the evidence that (1) a meritorious claim or defense exists; (2) the petitioner exercised due diligence in discovering the defense or claim in the original action; (3) despite such diligence and through no fault of the petitioner, the error of fact or valid claim or defense was not made apparent to the trial court at the time of the original action; and (4) petitioner exercised due diligence in [bringing]

21

the 2-1401 petition. [Citations.] In determining the reasonableness of the excuse offered by the petitioner, all of the circumstances attendant upon the entry of the judgment must be considered, including the conduct of the litigants and their attorneys. [Citations.]

A 2-1401 petition invokes the equitable powers of the court as justice and fairness require and should be considered in light of equitable principles. [Citations.] Whether a petition to vacate should be granted depends on the facts and equities presented. [Citation.] Relief is granted under this section in order to achieve justice, and a liberal construction is used to achieve that end. [Citation.]" *In re Marriage of Hoppe*, 220 Ill. App. 3d 271, 282-83 (1991).

¶ 46     The circuit court found that the terms of the MSA are so one-sided and oppressive that the MSA is substantively unconscionable as a matter of law. While such a finding may establish the existence of a meritorious defense to the entry of the MSA, which is the first requirement for section 2-1401 relief, this finding alone is insufficient to establish the diligence requirements of a section 2-1401 petition. This is because a finding of substantive unconscionability does not require the circuit court to consider the conditions under which the agreement was made (see *Callahan*, 2013 IL App (1st) 113751, ¶ 20), while a determination on due diligence requires the circuit court to consider all of the circumstances attendant upon the entry of the judgment, including the circumstances surrounding the MSA. See *Hoppe*, 220 Ill. App. 3d at 283.

¶ 47     Our supreme court has held that, because a section 2-1401 petition is addressed to equitable powers, a court may relax the requirement of due diligence "where justice and

22

good conscience" require it. *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 225 (1986). However, "[w]hile a liberal construction must be given to the petition to prevent an unjust result [citation], the ambit of section [2-1401] relief must not be overbroadened to such an extent that principles of equity and an ordered concept of justice are diluted." (Internal quotation marks omitted.) *Id.* at 227. To strike this balance, the court has held that it is appropriate to relax due diligence only in circumstances which point to unfair, unjust, or unconscionable conduct or deception on the part of the 2-1401 respondent or his/her counsel in procuring the judgment. *Id.* at 228.

¶ 48    Here, the circuit court found that equity requires relaxation of the due diligence requirements for a section 2-1401 petition without conducting an evidentiary hearing in which all the circumstances surrounding the making of the MSA and the entry of the judgment could be considered. The only case cited by the parties in which summary judgment was found to be appropriate on the issue of the relaxation of the due diligence requirement involved undisputed evidence that the MSA and/or judgment was procured by fraud. See *Callahan*, 2013 IL App (1st) 113751, ¶ 20. While the transcript of the dissolution hearing in this case reveals that the divorce court was not informed as to the value of the marital estate, or the relative value of the assets Kimberly was to receive under the MSA, whether these omissions amount to "unfair, unjust, or unconscionable conduct or deception" on the part of Gregory and/or Mr. Beggs cannot be adequately determined without also considering Kimberly's state of mind at the time of the hearing and her level of knowledge surrounding the marital estate, and the conduct of both parties when entering into the MSA.

23

¶ 49    Because we find that a summary judgment was inappropriate due to material questions of fact regarding the due diligence element of Kimberly's section 2-1401 petition, or whether equity requires relaxation of the due diligence requirement, we reverse the January 31, 2020, order on that basis. Thus, we will remand this matter to the circuit court for further proceedings. We do not comment on the propriety of the circuit court's summary determination as to the issue of the substantive unconscionability of the MSA, as such a determination, standing alone, would not provide Gregory a basis for an interlocutory appeal. Thus, we will leave it to the circuit court, at this juncture, to determine whether further proceedings on that issue are warranted on remand. See *Morningside North Apartments I, LLC v. 1000 N. LaSalle, LLC*, 2017 IL App (1st) 162274, ¶ 8 (a summary determination of a major issue in a case may be made pursuant to section 2-1005(d) of the Code (735 ILCS 5/2-1005(d) (West 2014)), but such an order is not a final order because it does not dispose of the claim and is thus not subject to interlocutory appeal).

¶ 50                            CONCLUSION

¶ 51    For the foregoing reasons, we reverse the January 31, 2020, order of the circuit court of Saline County that granted a summary judgment in favor of Kimberly on her section 2-1401 petition to invalidate the parties' MSA and remand for further proceedings consistent with this order.


¶ 52    Reversed and remanded.