2021 IL App (1st) 200062-U

FIFTH DIVISION
JULY 9, 2021

No. 1-20-0062

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| *In re* CUSTODY OF J.K. & C.K., | ) | Appeal from the |
| | ) | Circuit Court of |
| (ALEX K.., | ) | Cook County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | No. 16 D 79491 |
| v. | ) | |
| | ) | |
| LAUREN D., | ) | Honorable |
| | ) | Abby Romanek, |
| Respondent-Appellant). | ) | Judge Presiding. |

_____

JUSTICE CUNNINGHAM delivered the judgment of the court.
Presiding Justice Delort and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1   *Held:*  Respondent's appeal from the trial court's denial of her motion to reconsider the denial of her petition for an emergency order of protection is moot, and the trial court's dismissal of respondent's motion to vacate the default judgment is affirmed for failure to state a cause of action.

¶ 2   This appeal arises out of an order allocating parental responsibilities of the minor children,

J.K. and C.K., who were born to petitioner-appellee Alex K. and respondent-appellant Lauren D.

On September 15, 2017, the circuit court of Cook County entered a default judgment against

Lauren, allocating parental responsibilities between Lauren and Alex.

¶ 3    In July 2019, Lauren petitioned for an emergency order of protection against Alex, which was denied.  One month later, Lauren moved to reconsider the denial and, also moved to vacate the default judgment which had been entered on September 15, 2017.  In December 2019, the court denied Lauren's motion for reconsideration and, on Alex's motion, dismissed her motion to vacate the default judgment which had been entered on September 15, 2017.  On appeal, Lauren contends that (1) the trial court erred in denying her petition for an emergency order of protection, and (2) the trial court erred in dismissing her motion to vacate the default judgment which allocated parental responsibilities between Alex and herself.  For the reasons that follow, we affirm the judgment of the circuit court of Cook County.

¶ 4                                          BACKGROUND

¶ 5    The minor children, J.K. and C.K., were born in 2011 and 2013, respectively, to Alex and Lauren, who were never married.   Proceedings in the trial court commenced on April 13, 2016, with Alex's "emergency petition for a temporary and permanent injunction to return the children to their status quo[;] temporary and permanent allocation of parenting time and decision-making responsibility."  In the petition, Alex alleged that Lauren had removed the children from the home that they shared, and he sought the children's immediate return.  The parties underwent emergency mediation that resulted in the entry of an agreed order on April 18, 2016, dividing parenting time equally.

¶ 6    On June 10, 2016, the trial court entered an order in response to Lauren's "emergency petition to restrict petitioner's parental responsibilities and parenting time" (a copy of which is not in the record on appeal), requiring, *inter alia*, that Alex's parenting time be supervised by one of his parents.

¶ 7    Following this restriction on Alex's parenting time, Alex underwent hair follicle tests in December 2016 and January 2017, both of which revealed the presence of cocaine in Alex's system.

¶ 8    An order entered on May 10, 2017, revealed that counsel for Lauren filed a motion to withdraw, which the court entered and continued. The motion does not appear in the record on appeal, and there is nothing in the record to indicate that Lauren was served with the motion.

¶ 9    The matter was next before the trial court one month later, on June 13, 2017. Lauren was not present in court. In her absence, the court granted her counsel's motion to withdraw. The court's order allowed Lauren to either retain new counsel or file an appearance on her own behalf within 21 days. The record on appeal does not reflect that Lauren was served with a copy of that order.

¶ 10    On September 6, 2017, when Lauren failed to appear; retain new counsel; or answer Alex's emergency petition to allocate parenting time and decision-making responsibility; Alex moved for default judgment on his emergency petition for allocation of parental responsibilities. The notice of motion was mailed to Lauren at Alex's address in Oak Forest[1] and sent to Lauren's Yahoo email address. The court set the motion for September 15, 2017, for status on entry of a default judgment.

¶ 11    On September 15, 2017, Lauren was not present in court. The court entered a default judgment against Lauren allocating parental responsibilities between the parties.[2] The order granted Alex sole decision-making authority for the children after consultation with Lauren. In

---

[1] The record suggests that that was the address where the parties lived together with their children before they separated.

[2] The order of default and the judgment itself bear a file stamp of September 15, 2017. However, the first line of the default judgment states that the judgment "is made and entered this 17th day of September, 2017."

addition, the order shortened Lauren's weekly time with the children by one night.

¶ 12    The court ordered that the default judgment be served on Lauren at her Yahoo email address which had been provided to the court by Lauren's previous counsel.  A certificate of service reflects that Lauren was emailed a copy of the default allocation judgment on September 21, 2017.  In addition, by Lauren's own admission, Alex texted her on September 17, 2017, to inform her that a default judgment had been entered against her and to provide details regarding that judgment.  Lauren asserts that she called her previous counsel for an explanation but did not receive a response.

¶ 13    According to the electronic docket of the circuit court of Cook County, on April 18, 2019, new counsel filed an appearance for Lauren.  In her brief on appeal, Lauren states that she checked her Yahoo email account that same day, which is when she saw the default allocation judgment, which had been entered in September 2017, for the first time.  Lauren said that she had stopped checking that email account after she left her job in April 2017, as it was an account that she used while working.

¶ 14    Lauren's new counsel tried unsuccessfully to obtain Lauren's file from her previous counsel, but he ultimately "recreated" the file by obtaining copies of pleadings and orders in the case from the clerk of the circuit court, and the children's guardian *ad litem*.  In June 2019, counsel for Lauren showed her Alex's notice of motion for default judgment, at which point Lauren pointed out that it had been "served" on her at Alex's address.

¶ 15    On July 11, 2019, Lauren, through counsel, petitioned for an emergency order of protection against Alex. The petition alleged that on June 14, 2019, Lauren learned from Kim Fox, Alex's former fiancé, that Alex was using cocaine and had accused Ms. Fox of breaking into his home and "hacking into" his computer.  Ms. Fox texted Lauren on June 21 and 26, 2019, telling her that

Alex was suicidal, drunk, and threatening to kill himself. After receiving the text from Ms. Fox on June 26, Lauren called the Oak Forest police department and asked them to perform a wellness check on Alex, because she believed that the children were with him. Lauren later learned from the police that the children were not with Alex.

¶ 16    On June 26, 2019, Lauren learned in response to a subpoena, that Alex was receiving cash transfers of approximately $10,000 per month from someone in Colorado. He was also withdrawing $13,000 per month in cash from his bank account.

¶ 17    And on July 9, 2019, while Lauren was having a Face-Time call with her children, who were at Alex's residence, Alex grabbed the phone from J.K. J.K. began crying and said, "Dad, stop, you ruin everything." Alex stepped outside with the telephone and yelled at Lauren, accusing her and Ms. Fox of picking the children up from day camp and breaking into his house to look for drugs. Lauren denied the accusation.

¶ 18    These allegations formed the basis of Lauren's alleged fear for herself and the children. She stated that she believed the children may be shot or see Alex shoot himself given his "paranoid delusions," and his contact with the person from Colorado.

¶ 19    Lauren's petition for an emergency order of protection was scheduled and heard before a different judge, in a different district of the circuit court than Alex's original motion for allocation of parental responsibilities. Her counsel claimed that he filed the petition in a different district of the circuit court because of his schedule. That court "believe[d] [the] matter qualifie[d] as an emergency," but continued the proceedings to allow Alex and the children's guardian *ad litem* to be present. Since the matter was continued to another date, Lauren's counsel moved the matter back to the original district.

¶ 20    On July 15, 2019, the original trial judge heard Lauren's petition with counsel for both

parties and the guardian *ad litem* present. The court denied the petition without prejudice, stating that it failed to state a cause of action as it was based on hearsay statements. The court also found that the allegations did not demonstrate abuse as defined under the Illinois Domestic Violence Act (750 ILCS 60/101 *et seq.* (West 2018)).

¶ 21    On August 8, 2019, Lauren moved to reconsider the denial of the petition for an emergency order of protection.

¶ 22    The next day, Lauren moved to vacate the default judgment of September 15, 2017, on the basis that she did not receive notice that her attorney had withdrawn or of Alex's motion for default. Further, she alleged that when she was made aware of the entry of the default judgment, she acted diligently to vacate it. The motion was not supported by an affidavit.

¶ 23    Alex moved to dismiss Lauren's motion to vacate the default judgment, and the matter proceeded to a hearing on December 17, 2019. At the hearing, the court first heard argument on Lauren's motion to reconsider the denial of her petition for an emergency order of protection. The court denied the motion to reconsider, finding that there was no misapplication of the law or new evidence justifying reconsideration.

¶ 24    The court then granted Alex's motion to dismiss Lauren's motion to vacate the default judgment. Specifically, the court found that Lauren was not diligent in moving to vacate, because she knew of the entry of the default judgment months prior to filing the motion to vacate. The court suggested that a motion to modify the judgment might be more appropriate.

¶ 25    Lauren filed a notice of appeal on January 9, 2020.

¶ 26                                    ANALYSIS

¶ 27    We note that we have jurisdiction to review this matter, as Lauren timely appealed. Ill. S. Ct. R. 304(b)(3) (eff. Mar. 8, 2016); Ill. S. Ct. R. 303 (eff. July 1, 2017).

¶ 28    At the outset, we note that Alex has not filed an appellee's brief.  However, we may consider the appeal on Lauren's brief only, pursuant to the principles of *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976) (allowing consideration of appeal on appellant's brief only where the record is simple and errors can be considered without additional briefing).

¶ 29    On appeal, Lauren initially challenges the court's denial of her motion to reconsider the denial of her petition for an emergency order of protection.  We must first consider whether this presents an actual controversy, given the passage of time—nearly three years—since the events precipitating the filing of the emergency petition occurred.  Since the time Lauren expressed fear for the safety of herself and her children due to Alex's behavior (the petition is dated July 2019), she has not sought a plenary order of protection, nor has she petitioned for another emergency order of protection.  Indeed, in December 2019, when Lauren argued for reconsideration of the court's denial of her petition for an emergency order of protection, Lauren admitted that she did not know what was "going on" with Alex, or if there was still an "issue."  Instead, she based her argument for reconsideration on the court's finding that the petition was based on hearsay statements, which she contends was erroneous.  Because there is nothing to indicate that Lauren or the children are still in need of emergency protection against Alex, this issue is moot.[3]  See *People v. Johnson*, 2021 IL App (5th) 190515, ¶ 39 (an issue is moot if no actual controversy exists or where "events occur that render it impossible for the reviewing court to grant effectual relief").

---

[3] In her brief, Lauren acknowledges that this matter "may now be moot given the passage of time," but urges us to nevertheless consider the issue under exceptions to the mootness doctrine. It is sufficient to note that Lauren has not explained by way of argument or citation to authority that an exception to the mootness doctrine applies. As such, she has forfeited this argument. See *First National Bank of LaGrange v. Lowrey*, 375 Ill. App. 3d 181, 207 (2007) (mere contentions without citation to authority do not merit consideration on appeal).

¶ 30    Next, Lauren argues that the court erred in dismissing her motion to vacate the default judgment pursuant to section 2-1401 of the Code of Civil Procedure.  735 ILCS 5/2-1401 (West 2018).  In order to be entitled to relief under section 2-1401, a movant must set forth specific facts supporting the following elements: (1) the existence of a meritorious defense or claim, (2) due diligence in presenting the defense or claim to the trial court in the original action, and (3) due diligence in filing the section 2-1401 petition.  *Cavalry Portfolio Services v. Rocha*, 2012 IL App (1st) 111690, ¶ 8.  Generally, the petition must be filed within two years of the order sought to be vacated.  *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 103 (2002). Finally, the petition must be supported by an affidavit "or other appropriate showing as to matters not of record."  735 ILCS 5/2-1401(b) (West 2018).

¶ 31    Here, Alex moved to dismiss Lauren's motion to vacate pursuant to section 2-619.1 of the Code.  735 ILCS 5/2-619.1 (West 2018).  A section 2-619.1 motion asserts bases for dismissal pursuant to both sections 2-615 and 2-619 of the Code.  *Id.* Alex argued that Lauren's motion to vacate failed to state a cause of action upon which relief could be granted, justifying dismissal under section 2-615 (735 ILCS 5/2-615 (West 2018)), and was also untimely, justifying dismissal under section 2-619 (735 ILCS 5/2-619(a)(5) (West 2018)).  The trial court granted Alex's motion to dismiss, but did not specify the basis for dismissal.  We may affirm the trial court's decision on any basis appearing in the record, regardless of whether the trial court relied on that basis.  *Johnson v. Filler*, 2018 IL App (2d) 170923, ¶ 15. We review *de novo* the trial court's decision to dismiss a section 2-1401 petition.  *People v. Vincent*, 226 Ill. 2d 1, 18 (2007).

¶ 32    The dispositive issue on appeal is whether Lauren acted with diligence in bringing the section 2-1401 petition. In order to show diligence, the petitioner must offer a reasonable excuse for why they failed to act within the appropriate time.  *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 222

(1986). "The petitioner must show that his failure to defend against the lawsuit was the result of an excusable mistake and that under the circumstances he acted reasonably, and not negligently, when he failed to initially resist the judgment." *Id.*

¶ 33    Lauren argues that she was not aware of the entry of the default judgment allocating parental responsibilities until June 6, 2019, because her former counsel had withdrawn without giving her proper notice. Specifically, in the document attached to her motion to vacate, titled "Affidavit," she states that she did not receive email notice of Alex's motion for default and that the motion was erroneously mailed to her at Alex's address. Ordinarily, we would take these statements as true, insofar as they are not positively rebutted by the record or contradicted by a counter-affidavit. See *In re Marriage of Callahan*, 2013 IL App (1st) 113751, ¶ 22. However, the document attached to Lauren's motion to vacate, although titled "Affidavit," is not notarized or witnessed, and thus is not entitled to the presumption of truth.

¶ 34    In any event, Lauren's representations in her purported "affidavit" are belied by her own admissions, both in her motion to vacate and on appeal, that Alex informed her in September 2017 that a default judgment had been entered against her. This admission is borne out by the fact that the default judgment modified her parental time from the initial agreed parenting order of April 2016, and Lauren has been following the modified schedule, revealing that she knew the judgment existed because it changed the amount of time she spent with the children. Lauren also stated that after speaking to Alex, she contacted her former attorneys to understand what had occurred, but never received a response. It was not until April 2019, nearly one and a half years after the entry of the default judgment, that Lauren retained new counsel to investigate. She offers no explanation for this delay. Under these circumstances, we conclude that Lauren failed to act diligently in

moving to vacate the default judgment. Therefore, the trial court did not err in dismissing the motion to vacate.

¶ 35                                              CONCLUSION

¶ 36    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 37    Affirmed.